# Zimmerman v. Segal et al.

Sept. 23, 1941.

Richard B. Crawford, Richard P. Dietzman, Merit O'Neal and Kendrick R. Lewis for appellant.

Lawrence S. Grauman, Carl K. Helman and Farnsley, Hottell & Russell for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

The questions presented by this appeal are (1) the propriety of the trial judge in overruling appellant's motion to set aside a default judgment entered in favor

of appellees; (2) whether the petition and exhibits are sufficient to sustain the default judgment.

The appellee, George Segal, is the husband of his co-appellee, Hannah Segal, and brother of appellant, Ester Zimmerman. A. Segal, father of appellant and the male appellee, died testate on the 12th day of August, 1929. George Segal was nominated in the will to be executor and pursuant to said nomination was appointed by the county court. On the 1st day of May, 1933, he filed his final settlement which was duly approved by the court. It seems that in the year 1937 appellant became suspicious that her brother had not honestly handled the affairs of the estate and in December of that year employed counsel to investigate his actions, with the result that suit was filed by her against her brother on May 31, 1938, asking that he be required to make an accounting to her of the property which came into his hands. That suit is designated in the record as case No. 256510, Jefferson Circuit Court, Chancery Branch, First Division.

Thereafter, towit, on the 11th day of June, 1938, George Segal and his wife, Hannah Segal, filed this action against Ester Zimmerman, the Fidelity and Columbia Trust Co., a corporation, the Louisville Trust Company, a corporation, and the Home Owners Loan Corporation. In their petition appellees allege that A. Segal at the time of his decease was indebted to them in the sum of several thousand dollars; that he did not have personalty sufficient to pay all the debts of the estate; that appellee, George Segal, as executor, paid the debts of the other creditors before paying any of his or his wife's claims; that there remained unpaid and owing to him and his wife several thousand dollars; that at the time of his decease, A. Segal was the owner and in possession of 8 tracts of land described in the petition; and that upon the death of A. Segal appellant and he became the owners and came in possession of the real estate. He then prayed judgment against appellant for one-half the amount owing on said indebtedness, that liens in favor of the appellees be adjudged on the real estate devised to appellant, and that the real estate or so much thereof as would be necessary to satisfy the debts be sold for that purpose. The corporate defendants were made parties to set up their respective liens against the property.

At the instance of appellant's attorney, no action was taken to prosecute either of these suits pending an attempt to amicably settle the matters in controversy. Many conferences were held by the attorneys, some of which were attended by the parties litigant, and it appears that after negotiating almost 2 years an agreement was reached. The attorneys reduced the agreement to writing and it was duly presented to the parties for their signatures but after several weeks delay appellant refused to sign the writing. After she refused to sign the written agreement her attorney withdrew as her counsel, notifying her by letter which she admits receiving on the 30th day of April, 1940. It appears from the affidavit of the attorney for appellees that he notified Mrs. Zimmerman by letter that since she would not sign the agreement the appellees would set the case at rules and immediately move the court to refer the case to the master commissioner for his recommendation. Mrs. Zimmerman by affidavit denied having received this letter. The attorney for appellees is corroborated in his statement that the letter was received by Mrs. Zimmerman by his further statement, which was uncontradicted, that Mrs. Zimmerman's son-in-law called him by telephone at the instance of Mrs. Zimmerman and acknowledged that she had received the letter. The motion to refer to the master commissioner was made on the 3rd day of May, 1940, in the manner prescribed by the rules of the court. No answer having been filed, on the 17th day of May, 1940, the master commissioner recommended judgment which then was entered.

Six weeks later, towit, July 3, 1940, appellant having retained other counsel, moved to set aside the judgment and in support of the motion filed her affidavit which recited a portion of the above facts and in addition stated that at the time she received the notice that her attorney was withdrawing from the case she was a "very sick woman, confined to her bed, in urgent need of a major operation and in a highly nervous physical condition and mentally unfit and unable to comprehend the significance or import of said notification or that it would be necessary to immediately employ some other attorney to represent her interests"; that she had understood that no steps would be taken in the case except on formal notice to her; that she had not received any such notice; that she had no knowledge of the rules of

the court; and that she had a good defense to the suit. She then tendered her answer. She filed an affidavit of her physician which was to the effect that she was ill; but a second affidavit filed by him stated that she was not so ill she did not understand the import of the letter from her attorney.

The power of a trial court to set aside a default judgment at the term in which it was rendered is inherent and should never be withheld strictly as a rebuke for short comings in practice, but, it should never be granted as a favor. It is a judicial discretion, and unless the discretion is abused, the decision in that respect will not be disturbed by this court. Southern Insurance Company v. Johnson, 140 Ky. 485, 131 S. W. 270; Union Gas and Oil Company v. Kelly, 194 Ky. 153, 238 S. W. 384.

As said in Roseberry v. Wilson, 68 S. W. 417, 418, 24 Ky. Law Rep. 285:

"It is to the interest of society, no less than of the parties, that litigation should be terminated as speedily as possible; and after the parties have had their day in court and a judgment has been entered, it should never be opened to let in a defense which the parties, at the time, with full knowledge of all the facts, declined to make."

The uncontradicted evidence in the case conclusively shows that the trial of this case was delayed at the instance of appellant for a period of time in excess of 2 years, and her unwillingness to act on the advice of her attorney and to diligently proceed with her duty in respect to the matter in controversy was the cause of a goodly portion of the delay. We assume that the trial court concluded that Mrs. Zimmerman had received the letter advising her that the case would be set for trial and with its decision in this regard we can find no fault. That fact having been determined, the appellant had 9 days before the case was set on the docket and 23 days before judgment was entered in which to consult an attorney and at least file a dilatory motion. But, so far as can be learned from this record, she took no action in her own behalf from the 30th day of April until the 1st day of July to protect her alleged rights. Such delay is inexcusable, and in view of the previous delay of almost 2 years occasioned at her instance, we are of the opinion that the trial court did not abuse his discretion

in refusing to then set aside the default judgment. Since a decision of this character rests within the sound discretion of the trial court and will not be disturbed unless an abuse of discretion is apparent, and, since after a 2-year investigation, it cannot be said that appellant did not have full knowledge of all the facts alleged in the answer before the case was submitted, we have concluded that the complaint that the court erred in overruling appellant's motion to set aside the default judgment is without merit.

In the petition appellees allege that A. Segal executed to each of them several notes for money borrowed by him from them in his lifetime. Two of the notes were dated and it is alleged were executed on the same date, one payable to Hannah Segal in the amount of $1,000 (about which no complaint is made), the other payable to George Segal in the sum of $1,100. It is admitted that both signatures are genuine. The $1,100 note was signed by the maker in the upper left-hand corner, the signature being upside down in respect to the other writing on the paper. However, it is in the exact position that the signature of the maker would have been placed had the instrument been presented to him in an inverted position without his discovery of that fact. The notes were executed on a printed form and with the exception of the amount and payee are identical. The printed portion of the note as well as the blanks filled with pen and ink are enclosed within a printed border consisting of 3 lines. Mr. Segal's signature is substantially within this printed border which likewise encloses all other pen and ink insertions material to the contract. There is no writing in the note other than that which was necessary to fill the blank spaces except "interest at 6 per cent" which was the rate which would have prevailed had it not been inserted. Since both notes were executed at the same time and were so identical in the respects mentioned and since the signature affixed in the upper left-hand corner was upside down in respect to the other writing on the paper and was within the border of the printed form, it is apparent that at the time it was executed the $1,000 note was placed over or on top of the $1,100 note for the convenience of the maker. We cannot escape the conclusion that this was the reason the inverted position of the paper was not noticed by the maker; and we are of the further opinion that the sig-

nature was intended to be placed in the lower right-hand corner at the end of the instrument.

The common law rule in respect to the signing of notes is that the name of the maker is usually subscribed at the bottom of the note, but if his name is subscribed elsewhere in the body of the note so that it clearly appears that he is the maker, such signature will be sufficient. 7 Am. Jur. Section 202, page 904; 10 C. J. S., Bills and Notes, Section 37, p. 460. That rule prevails in many jurisdictions today. Indeed it prevails in Kentucky unless Section 468 of the Statutes changes the rule. That section reads:

> "When the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed unless the signature be subscribed at the end or close of such writing."

The legislative intent in enacting Section 468, supra, is obvious. A signature placed at the end of the writing clearly shows that all the matter above the signature expresses all which the signer wished to authenticate and that nothing has been appended to the writing which the signer did not wish to authenticate or by which he did not intend to be bound. Gentry's Guardian v. Gentry, 219 Ky. 569, 293 S. W. 1094. But it was never intended by the Legislature that the rule expressed in the Statutes should be used to invalidate a promissory note, to which it is obvious nothing has been appended, and where the note clearly manifests on its face that the signer of the instrument intended to affix his signature at the close or end of the writing, although, by inadvertence or mistake he actually affixed it at some other place. We are of the opinion that where it is manifest on the face of the instrument, as it is in this case, that the maker intended to sign at the end of the instrument, but mistakenly or inadvertently signed at another place, the signature will be deemed to have been affixed at the end of the instrument within the meaning of the Statute.

The judgment and order overruling the motion to set it aside are accordingly affirmed.

Whole court sitting.