No. 18,848.

Elizabeth L. Oswald, Administratrix, etc. *v.* Clyde S. Dawn, et al.

(354 P. [2d] 505)

Decided August 2, 1960.

Mr. O. F. Adams, Messrs. Kreager & Sublett, for plaintiff in error.

Mr. Anthony F. Zarlengo, Mr. Dean C. Mabry, for defendants in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

Plaintiff in error was plaintiff in an action instituted in the District Court of Las Animas County in which the defendants in error were named as defendants. The parties will be referred to in accordance with their designation in the trial court except where the reference is to a particular defendant.

The judgment of the district court awarded plaintiff the sum of $552.45. This was the amount that plaintiff had sought in her "Fifth Cause of Action." Plaintiff's other demands (described in her First, Second and Fourth Claims), were dismissed at the close of the plaintiff's case and she seeks review of this aspect of the judgment.

Plaintiff seeks an accounting of partnership transactions. She is the widow of George Oswald, deceased, who during his lifetime had been engaged for a number of years in various enterprises with the defendant Clyde S. Dawn in Trinidad, Colorado. Plaintiff alleges that the

defendant Dawn made unauthorized use of funds in excess of $37,000 belonging to the partnership. She seeks an accounting of these funds and a judgment for one-half of the sum alleged to have been diverted. Her prayer is for judgment in the amount of $18,969.24.

Although the existence of a partnership is admitted, no formal articles of partnership were executed; the various enterprises of the parties were carried on informally. Oswald and Dawn had been engaged in various businesses, including a cleaning establishment, a coal company and a motel. They also maintained bank accounts under the name of Dawn-Oswald Real Estate Company and the controversy generally revolves around deposits and withdrawals from this account.

Oswald died on July 30, 1952. Following this the various accounts of the partnership were audited. Plaintiff and defendant agreed to have Richard Azar, a Certified Public Accountant, who had been auditor for Dawn and the partnership, audit the partnership books, records and accounts, which records and accounts consisted merely of deposit slips, checks and bank statements. There was also a private memorandum which was kept by the defendant Clyde Dawn and his wife, Josephine Dawn. The accountant recognized this as a memorandum and not as a book of original entry and the court excluded it as evidence. Nevertheless the accountant made use of it in the course of his audit and the judgment of the court appears to have been based upon certain controversial entries contained in this memorandum book.

Prior to the trial, the court considered it necessary to refine the fact material and to that end appointed another accountant, Robert J. Miles.

"* * * to act as Referee to take and state an account of all dealings and transactions between George Oswald, deceased, and the defendant, Clyde S. Dawn, a co-partnership doing business under the firm name and style of Dawn-Oswald Real Estate Company, during the lifetime of the said George Oswald.

"For the better taking and stating of such account which the parties are to produce before the said Referee under oath, all books, deeds, papers and writings in their custody or under their control relating to said partnership; and are to be examined upon interrogatories or otherwise as the said Referee shall direct, who, in taking said account, is to make all just allowances to the parties as between said partners; and what, if any, balance of the said account shall appear to be due from either party to the other, is to be paid as the said Referee shall find and direct; and said Referee is at liberty to state and report any special circumstances, as well as his reasons for allowing or disallowing any allowances which may be claimed."

Contrary to the court's order, the Referee failed to hold hearings, did not swear the witnesses nor make a record. Instead he made an investigation in the course of which he interviewed the interested parties and examined the Azar audit. His final report was in substantial agreement with this audit, being based in part on the defendant Dawn's memorandum book, his deposition and statements.

The evidence essential to this determination appears in the testimony of the accountant, Richard Azar, and in his audit which was for the period commencing January 1, 1948, and ending July 31, 1952. This audit was based upon deposit slips, checks and bank statements, plus the memorandum book which was shown to have been kept by the defendant Clyde Dawn and his wife Josephine Dawn. Azar concluded that there was due and owing from Dawn to the estate of Oswald the sum of $552.45.

It was shown that Dawn had withdrawn the sum of $15,337.50 from the partnership accounts and that $10,000 of this amount had been paid to his business, the Dawn Motor Company. The balance had been used by Dawn to satisfy his obligations. Azar charged Dawn's account with this entire amount.

Azar also determined that Dawn's withdrawals from the partnership bank accounts had exceeded the withdrawels of Oswald by $4,125.67. This sum was also charged against Dawn. Moreover, an audit of the accounts of the Rugby Coal Company, one of the partnership enterprises, also disclosed excess withdrawals by Dawn amounting to $4,617.32. This sum was also charged to his account. It further appeared from this audit that during the period of the partnership Dawn had withdrawn some $11,388.99 from the partnership accounts and used the money to construct a building in Raton, New Mexico. This is referred to as the Triangle Building. The rentals from this were deposited in the partnership account. Dawn finally sold this building for the sum of $15,000. He treated the sum so invested as a loan to him and reimbursed the partnership account by means of the rentals and other sources. This property was treated by the auditor as the property of Dawn and this conclusion is vigorously controverted by the plaintiff who claims that use of the partnership funds to acquire this building and perfect the title resulted as a matter of law in its being partnership property. In support of the loan theory of Dawn, there is testimony that a Deed of Trust was executed to the partnership. The indications are that this was not recorded, and it was not introduced in evidence. Dawn also claims ownership of the land long prior to the transaction in question.

In addition to the items mentioned, there were deposits to the partnership accounts which the auditor could not identify. These totalled $22,985.31. In view of the inability to discover the source of these deposits, they are not credited to Dawn's personal account.

The various charges to Dawn's personal account were offset by Dawn's claim on behalf of himself and his wife in an amount exceeding $21,000 on account of salaries to them for services rendered by them to the Dawn-Oswald Real Estate Company. As a result of crediting Dawn with these amounts for salary and expenses, the balance

in favor of the plaintiff's estate was found to be $552.45.

At the conclusion of the plaintiff's evidence, defendants' motion to dismiss was granted as to each of plaintiff's claims except the fifth in the amount of $552.45. This latter sum has been revealed by the audit to be due and owing, giving full credit to Dawn for the amounts claimed by him for salary and expenses. The court noted that the only information before it was the Azar audit and further observed:

"* * * It was indicated in that audit that some information had been obtained from a record book of some nature, kept by the defendant Clyde Dawn. Some of such information was incorporated in the auditor's report.

"The report of the referee recited he made such investigation as he could, and he was obliged to rely to some degree on the audit made by the auditor Azar. * * *"

The court's final conclusion was that it was impossible to definitely determine that any amount was due and owing the plaintiff's estate other than the $552.45 and added:

"* * * It is a situation in which possibly some information could have been afforded the Court to arrive at some definite conclusion as to any amount due one way or the other, but the Court was precluded from so doing, by the plaintiff having invoked the protection of the so-called Deadman statute, and the Court is prohibited from getting any definite amounts that might be due one way or the other.

"For the reasons stated, it is the order insofar as the 1st, 2nd, 3rd and 4th causes of action are concerned, that the motion of the defendants to dismiss will be sustained. * * *"

In a subsequent order overruling the motion to reconsider, the court declared that Azar had prepared income tax returns for the partnership during the lifetime of the decedent and that deceased had not objected to any salary claims of the defendant Dawn. The record

fails, however, to disclose that any such partnership returns were ever filed. Indeed the defendants admit and agree that neither tax nor information returns were filed on behalf of the Dawn-Oswald Real Estate Company. Furthermore, there is nothing in the record showing that Dawn ever claimed a salary during the lifetime of the decedent. His salary claims appear to be based entirely upon entries in his memorandum book which are now offered to offset charges against him and thus to create a favorable balance.

In seeking reversal, plaintiff makes two contentions. She urges:

*First,* that it was error to dismiss her claims in view of the fact that this evidence showed substantial unrepaid withdrawals on the part of Dawn; in the absence of agreement, a managing co-partner is not entitled to a salary which in this case was used to offset the unrepaid withdrawals.

*Second,* that the moneys invested by Dawn in the Triangle Building created a trust for the benefit of the partnership.

I.

Prefatory observation is in order concerning the failure of the referee Miles to conduct hearings in accordance with the directions of the court. As already indicated, he merely carried on what amounted to an audit and upon the basis of various hearsay statements made a report in which he passed on the title to the Raton real estate and in other respects adopted the Azar report, reserving for the court's decision as a matter of law the question of whether the defendant Dawn was entitled to credit for salary and expenses. In view of the referee's failure to hold a hearing and to thus extend to plaintiff the opportunity to object to questions and cross examine, it was error for the trial court to consider this report. Rule 53 of the Rules of Civil Procedure provides that a referee may rule upon the admissibility of evidence unless otherwise directed by the order of

reference. This rule contemplates that a hearing rather than an ex parte investigation shall be held. See also 5 *Moore Federal Practice,* 2953, Sec. 53.06 and see 19 Am. Jur., *Equity,* Sec. 372, 30 C.J.S., *Equity,* Sec. 537.

The trial court did not receive in evidence the memorandum book which had been kept by Dawn. It was apparently excluded on the basis of the so-called Deadman statute, C.R.S. '53, 153-1-2, which prohibits the surviving party's testifying in a suit by the executor of the deceased party's estate. The court recognized that these private book entries were subject to the prohibition of this statute. See *Wilson v. Warner,* 83 Colo. 280, 264 Pac. 657, holding that the section of the statutes dealing with book accounts, C.R.S. '53, 153-1-3, is not an exception to the Survivor or Deadman statute. In the *Wilson* case, the court observed:

" * * * Had it been the intention of the legislature to make book accounts also an exception it would have included them among the others."

At the same time the court gave effect to these book entries by accepting the Azar and Miles reports.

## II.

We cannot reconcile the trial court's holding that the memorandum book was inadmissible with its order of dismissal implicit in which was a recognition of authenticity of the salary and expense claims which were credited to Dawn in the Azar audit. In other words, the salary and expense entries, being incompetent, could not furnish a basis for the trial court's judgment either by direct consideration or by their inclusion as the basis of an auditor's report or a referee's report. This testimony was in violation of the Deadman statute and, in addition, from what appears in the record before us, was hearsay and inadmissible under any exception to the hearsay rule. The failure of the trial court to exclude the auditor's report insofar as it was based upon entries in the Dawn memorandum book was error, 153-1-3, supra, and *Wilson,* supra.

## III.

Plaintiff's final contention is that the court should have adjudged that Dawn held the Triangle Building or its proceeds in constructive trust for the partnership. On this the facts are not in conflict, but different inferences and legal conclusions are possible. Plaintiff calls attention to the statute, C.R.S. '53, 104-1-8, and numerous cases, *Kayser v. Maugham,* 8 Colo. 339, 340, 7 Pac. 286; *Hodgson v. Fowler,* 24 Colo. 278, 283, 50 Pac. 1034; *Payne v. Martin,* 39 Colo. 265, 89 Pac. 46; *Kincaid v. Miller,* 129 Colo. 552, 562, 272 P. (2d) 276; *Austin v. Stephen,* 89 Colo. 177, 181, 300 Pac. 364 and *Hanson v. Chamberlin,* 76 Colo. 562, 233 Pac. 830, which recognize the principle that when property is acquired with partnership funds a presumption arises that it is the property of the partnership. Applying this rule to the presents facts, we must conclude that plaintiff's evidence, considered in its best light, was sufficiently substantial to require the defendant to go forward with evidence in support of his theory that the monies invested in the Triangle Building constituted a loan and were intended by the partners to be so treated and considered.

Upon retrial, all competent evidence should be carefully adduced and dissected with a view to determining whether this was in fact a loan or was as a matter of law a partnership enterprise. Furthermore, specific and detailed findings and conclusions on this point and the other controverted matters in the case should be entered.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

MR. JUSTICE HALL and MR. JUSTICE DAY not participating.