## No. 21825.

CREDIT INVESTMENT AND LOAN CO., INC., A COLORADO CORPORATION *v.* GUARANTY BANK AND TRUST COMPANY, A COLORADO CORPORATION, AND WALTER A. WOODS.

(444 P.2d 633)

Decided August 26, 1968.

472

474

RICHARD H. BATE, for plaintiff in error.

WINNER, BERGE, MARTIN and CAMFIELD, QUIAT, SEEMAN & QUIAT, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THIS case arose out of a financing arrangement between Credit Investment, the plaintiff below, and Guaranty Bank, one of the defendants. The other defendant in the trial court was Walter A. Woods, President of Guaranty Bank. The parties will be referred to herein as plaintiff and defendants or by name.

The plaintiff's amended complaint contains five claims which will be described later in this opinion. Each claim was answered by the defendants and after trial to the court, findings of fact and conclusions of law were made and judgment was entered against the defendant bank for $27,477.08 plus interest on Claim No. 3 only. Plaintiff claims this judgment was inadequate, and that the trial court erred in dismissing the other claims, except Claim No. 1 which was withdrawn by the plaintiff during the trial. Plaintiff urges reversal of the judgments of dismissal of Claim Nos. 2, 4, and 5 and that the trial court be ordered to modify its judgment by entry of a $72,489 judgment against the defendant bank and to enter a judgment against Defendant Woods for the same $72,489 plus a further amount of $37,000. Also, the plaintiff contends that the trial court erred in setting aside the default entered on its ex parte motion and denying its motion for a summary judgment.

Defendant bank claims that the findings and consideration of factors utilized by the court in determining the amount of judgment on Claim No. 3 are erroneous, and that the award of interest on the judgment is contrary to law. In particular, the defendant bank claims that the findings of fact and conclusions of law and its judgment are based on matters not raised by the pleadings, the pretrial order, the contentions of the parties, or the evidence in the case. Also, the defendant bank maintains that the court erred in adopting certain findings and facts from the auditor's report, because the auditor held no hearings, and reported on matters not encompassed within the issues framed and upon which no evidence was presented during the trial. Defendant bank does concede that judgment for not more than $3,207 would have been proper on the plaintiff's third claim and requests that the case be remanded with directions to modify the judgment to this amount or $1,400 as both amounts have support in the record as the balance in a reserve account to which the plaintiff would be entitled. In the alternative, the defendant bank urges a reversal and a remand for a new trial on the third claim. Otherwise, on behalf of both defendants, it is argued that the court properly dismissed Claim Nos. 2, 4 and 5.

Plaintiff maintains the defendant bank has no standing in this court to urge reversal or remand of the judgment against the bank on Claim No. 3 because it neither filed a praecipe for writ of error or filed the record within the time prescribed. Defendant bank counters by stating in its brief that after filing separate designations of record, both counsel filed a stipulation dispensing with counter designation of record, and that they agreed to and did split the cost of the record filed in this court. Also, defendant bank's answer brief cross-assigns error to the judgment for the plaintiff on the third claim and devotes a substantial portion of its brief to this alleged error. The plaintiff thereafter filed a

reply brief. Furthermore, this alleged error is fully outlined in the defendant bank's motion for new trial. It therefore appears clearly that in accordance with R.C.P. Colo. 111(f), the defendant's cross-assignment of error may be properly considered on this writ of error.

The facts which gave rise to this case are as follows. The plaintiff engaged in the purchase of promissory notes from companies which contracted for home improvements. Robert C. Yarbrough, the managing agent of the plaintiff, discussed the negotiation to the bank of these non-recourse notes as acquired with David F. Finnegan, then Vice President of the defendant bank but deceased at the time of trial. There was an agreement that the plaintiff would sell and the bank would buy these notes on a recourse basis and a letter was sent by Mr. Finnegan on behalf of the bank to Mr. Yarbrough relating to the terms of purchase of these notes by the bank. This letter in pertinent part is quoted as follows:

"We are setting up the following plan for your firm in accordance with our discussion:

1. Purchase individual contracts on following basis.

2. Rate — 6% on unpaid balance of contract.

3. Advance — 100% (50% to regular checking account and 50% to reserve account).

4. Maximum terms to be 36 months.

5. Type of contracts — home modernization and other to carry F.H.A. required forms, such as Certificate of Completion, etc.

6. Payments to be collected and account serviced by Yarbrough. Payments remitted daily — Twice or three times weekly.

7. When customer is three payments delinquent, balance due may be charged to reserve account.

8. Reserve account to be maintained at no less than 50% of the total outstanding notes.

9. Notes endorsed 'With Recourse.' "

The parties involved relied upon this letter and upon

*other* verbal statements to each other, with the result that 118 commercial transactions were entered into between the plaintiff and the bank as alleged. in the amended complaint. These transactions involve promissory notes endorsed to the bank "with recourse" totaling $114,152 of which the bank retained $57,076 in a "reserve account," and paid the balance to the plaintiff as contemplated by paragraph 3 of the letter.

Sometime in January 1957, officers at the bank, contemplating that they would purchase from plaintiff during any one month only up to $20,000 in notes, became "alarmed" about the total amount of notes being purchased during that month. They began interrogations of the makers of the notes and investigations of the various documents as stated in paragraph 5 of the letter. Suffice it to say, because of discovery of what was later alleged as fraud in defense of the various claims filed against the bank, the bank refused on February 8, 1957 to purchase additional notes. On March 25, 1957, the bank took over collection and complete control of all of the notes and proceeded to receive payments directly from the makers after that date.

The plaintiff having purchased additional notes without recourse prior to February 8, 1957 and after that date, then sought other banking institutions to whom they could sell such notes on a similar basis. Subsequent inquiry of Defendant Woods by one banking institution led to the allegations against Woods as contained in Claim No. 5. The amended complaint contains five separate claims briefly summarized as follows:

*Claim No. 1* — For loss of profits in the amount of $1,694.70 due to refusal on February 8, 1957 of the bank to accept additional completed contracts under the bank's continuing offer. This claim was withdrawn by the plaintiff during the trial.

*Claim No. 2* — For expenditures in the amount of $9,066.75 in acquiring commercial paper and for loss of profit in the amount of $6,346.75 on the acquired

paper, both allegedly due to the bank's revocation without prior notice of its agreement to purchase promissory notes from plaintiff.

*Claim No. 3* — For the amount of $57,076 held by the bank in a reserve account for plaintiff on March 25, 1957, the date of the bank's alleged breach and disaffirmance of the contract between the parties which it is claimed gave plaintiff the right to treat the contract at an end and thus entitled plaintiff to the full amount in the reserve account.

The first three claims were against the bank *only*. Claims 4 and 5 were against Woods only.

*Claim No. 4* — For the combined amounts of claims Nos. 2 and 3 for the alleged wilful and malicious inducement by Woods which caused the bank to breach the contract with the plaintiff.

*Claim No. 5* — For the amount of $37,000 representing loss of plaintiff's capital investment and total destruction of its business due to alleged wilful and malicious inducement of other banks not to have business dealings with plaintiff and due to alleged false misrepresentations by Woods to other bankers that the plaintiff was improperly conducting its finance business.

The trial court granted defendant's motion for summary judgment on August 25, 1958. To this judgment, the plaintiff brought a writ of error and this court, in *Credit Investment and Loan Co., Inc. v. Guaranty Bank and Trust Company and Walter A. Woods,* 143 Colo. 393, 353 P.2d 1098, reversed this judgment and remanded the cause with directions to the trial court to vacate its judgment and to enter a rule upon defendants to answer or otherwise plead to the amended complaint.

Upon remand, such rule was entered on August 29, 1960, granting twenty days within which to answer or otherwise plead. On November 16, 1960, default was entered upon plaintiff's oral motion and written affidavit against both defendants for failure to answer or otherwise plead. Answer was finally filed on December

4, 1961 and on January 24, 1962, the trial court set aside the default and denied plaintiff's motions for default judgment or summary judgment. The plaintiff complains here that such motions should have been granted and assigns error thereto, and that the trial court abused its discretion in setting aside the default.

At the conclusion of plaintiff's case, the trial court granted Defendant Woods' motion for dismissal, thereby disposing of Claim Nos. 4 and 5, and entered judgment for Woods, on the basis of insufficient evidence and that the evidence did not show malice, premeditation, or intent to intentionally hurt the plaintiff. Plaintiff seeks reversal here of this judgment of dismissal.

On August 10, 1964, at the conclusion of defendants' evidence, the trial court ordered that Isaac Willson, a C.P.A. and an attorney at law, audit and file a report. Neither the plaintiff or defendant bank objected. We do not find in the record any order of reference, as contemplated by R.C.P. Colo. 53, which would set forth the scope of the auditor's authority. Hence, we must assume that the auditor or master was to perform the limited function of auditing the "reserve account" of the plaintiff in the bank as provided in Rule 53(b) pertaining to matters of account in actions tried without a jury.

Upon submission of the auditor's report to the court, findings and judgment were entered on February 8, 1965. Claim No. 2 was dismissed on the basis of insufficient evidence to establish the claim. The plaintiff seeks here a reversal of the order and judgment dismissing this claim.

The trial court entered judgment in favor of the plaintiff and against the bank for $27.477.08, together with interest from March 25, 1957, as purportedly authorized by C.R.S. 1963, 73-1-2. This amount was reached by the court through the following computations, findings and conclusions:

(1) Of the total amount of notes endorsed to the

bank, $57,634.47 according to the auditor's report, was retained in the reserve account in accord with the letter;

(2) That there then remained at time of judgment in the reserve account the amount of $11,490.33 to which plaintiff was entitled;

(3) That the bank is entitled to an amount of $8,282.39 from the plaintiff for interest earned on the monies advanced to the plaintiff and therefore, the plaintiff is entitled to $3,207.94 as the balance in the reserve account.

(4) That the bank took over collection and complete control of all of the endorsed notes and also took over the responsibility for the speedy, prudent and business-like collection of said notes;

(5) Thirty-five notes, totaling $41,792.54 remain partially or wholly unpaid and have been charged off by the bank to plaintiff's reserve account;

(6) That notice of the default of these 35 notes was required to be given the plaintiff as endorser of these notes under Chapter 95 of 1963 C.R.S., the Negotiable Instrument Act. Notice on 13 of these notes was sufficient because of bankruptcy and foreclosure notices to the plaintiff. In addition, because the bank used all possible diligence in collection of these 13 notes, totaling $17,523.40, this amount should be credited against the total of the $41,792.54, leaving a balance of $24,269.14, represented by 22 remaining notes. As to these, the court found failure of the bank to give adequate notice and failure to exercise reasonable diligence and care to collect the accounts and protect plaintiff's equity therein. The court therefore held that plaintiff is entitled to damages on this ground in the amount of $24,269.08;

(7) That title to the uncollected notes should vest and remain with the bank; and

(8) That plaintiff is entitled to judgment therefore against the bank in the sum of $27,477.08 ($24,269.14 plus $3,207.94) plus interest from March 25, 1957, the

date of the taking of the notes by the defendant bank "as authorized" by C.R.S. 1963, 73-1-2.

A summary of plaintiff's contentions are that the amount of judgment against the bank should be $72,489.50, based upon Claim Nos. 2 and 3, and against Woods individually in the sum of $109,489.50 based upon Claim Nos. 2, 3, 4 and 5, and that both judgments should bear interest from March 25, 1957.

The bank contends that if the plaintiff is entitled to any judgment, the amount should be $3,207.94 which is the difference between $11,490.33 — the balance of the reserve account according to the auditor's report — and $8,282.39 interest to which the bank is entitled, *or* the amount of $1,400, the amount remaining in the reserve account, according to the testimony of a witness for the defendant bank.

## I.

Did the trial court commit reversible error in setting aside the defaults against defendants and in not granting the plaintiff's motion for summary judgment?

■■ A motion to vacate and set aside a default is addressed to the sound discretion of the court, and the order of the trial court will not be disturbed unless it clearly appears that there was an abuse of discretion. A trial court has wide discretion in such matters, and therefore, unless the record reflects a clear abuse of discretion, we will not interfere with a ruling setting aside a default. *Mosco v. Jeannot,* 86 Colo. 441, 445, 282 P.874. See also *Self v. Watt,* 128 Colo. 61, 259 P.2d 1074 relating to setting aside a default judgment.

■ The record before us is devoid of anything which shows any facts or circumstances upon which the court ruled, nor do the briefs furnish anything which might give us a hint as to the reasons why the default was set aside. Other than the mere lapse of time, there are no factors shown in the record which indicate an abuse of discretion. There is a presumption of regularity applicable to trial court rulings in this category, and with-

out a clear portrayal of an abuse of discretion, we will not reverse the trial court's ruling setting aside a default.

■ Based upon our holding in the previous *Credit Investment* case, *supra,* regarding summary judgments, and in light of the various defenses in defendants' answer which raise genuine issues of material fact, we hold that the trial court was correct in denying the plaintiff's motion for summary judgment against the defendants.

## II.

Did the trial court err in dismissing Claim Nos. 4 and 5 against Defendant Woods and in entering thereupon judgment of dismissal at the conclusion of the plaintiff's evidence?

■ We have reviewed the testimony in the record and have given close attention to plaintiff's points of argument in this regard and must conclude that the trial court's dismissal is substantially supported by the record. The evidence was insufficient in showing malice or wilfulness on the part of Defendant Woods, and was otherwise deficient in establishing the material elements of these claims. The trial court, as the finder of the facts, did not err when it dismissed Claim Nos. 3 and 4 against Defendant Woods.

## III.

Did the trial court err in dismissing Claim No. 2 on the basis of insufficient evidence to support this claim?

■■ Claim No. 2 was predicated upon revocation by the bank of its alleged continuing offer to purchase notes from the plaintiff. The facts were in dispute at the conclusion of the evidence as to whether there was an offer of such a continuing nature that a refusal to purchase additional notes constituted a breach or revocation of the alleged contract or offer. We will not substitute our own opinion or finding of the facts when an issue has been resolved by the trial court on disputed facts. On the basis of insufficient evidence to establish Claim No. 2, we find no error in the dismissal by the trial court

and the entry of judgment for the defendant bank on this claim.

IV.

As to Claim No. 3, is the judgment against the defendant bank for $27,477.08 plus interest from March 25, 1957, erroneous?

■ We hold that this judgment cannot be supported by the record before us and therefore, must be reversed. There are a number of factors, which in our view, require this disposition and plaintiff's contention that the court erred in not adjudging the plaintiff the full amount deposited in the reserve account is also without any support in the record.

On page 3 of the trial court's findings and judgment, the court finds that an agreement was entered into between the plaintiff and the defendant bank, but there is no finding that either party breached the agreement, although a breach was alleged by both the plaintiff and the defendant bank. It must necessarily be inferred that the court in effect found that neither party breached the agreement, the provisions of which are contained in the Letter and supplemented by understandings resulting from discussion between the parties or necessarily implied. There is no finding as to those portions of the agreement which were arrived at through discussion and understanding between the parties or necessarily implied. On the basis of disputed evidence as to what the provisions of the contract were, together with the disputed evidence as to violations of any of the provisions of the Letter or other provisions either expressed or necessarily implied when the agreement was entered into, the court obviously decided that there was no reason to make a finding as to the unwritten provisions of the contract, since it did not find that either party by its conduct violated the contract.

Claim No. 3, however, does not rest on a single claim for damages resulting from a breach of contract or "the business agreements" as alleged. Necessarily coupled

therewith is a claim for the reserve account in full or any part thereof which the plaintiff is entitled to as a result of the transactions which were consummated between the parties in accordance with the plan specified in the Letter. This, then, was the only issue left to be resolved and as we interpret the impact of the court's findings and judgment, this also, in fact, is the only issue the trial court endeavored to settle.

The evidence before the trial court is sparse on this issue, the resolution of which would seem to depend partially upon accounting evidence. The trial court, as well as the parties, apparently recognized the necessity of an audit of the bank's records because after the completion of the evidence, an accountant was appointed with the approval of counsel to examine the bank's records and make a report. In due time, the accountant submitted his report which the court relied upon almost exclusively as a basis for its judgment.

As adopted from the accountant's report, the court found that the 118 notes sold to the bank amounted to $117,858.19; that of this total, $58,262.47 was paid to the plaintiff upon receipt by the bank of these notes; that an additional $1,961.25 was paid directly to the plaintiff by the bank; and that the bank retained $57,634.47 in the reserve account. The court further found on the basis of the accountant's report that 35 of the notes as of October 31, 1964 remained partially or wholly unpaid, representing a total unpaid balance of $41,792.54 which had been charged off by the bank to the reserve account.

The trial court proceeded then to find that on 22 of the notes which remained partially or wholly unpaid, the bank was liable to the plaintiff for the unpaid balance in the sum of $24,269.14 because as the court stated in its finding:

" . . . the Bank failed to give adequate notice to the plaintiff as endorser of the notes, as required by the Uniform Negotiable Instrument Act as set forth in Chapter 95 of the 1963 Colorado Revised Statutes, of

the default of said notes, and failed to exercise reasonable diligence and care to collect the accounts and to protect the equity of the plaintiff therein. In some cases, the Court finds that for some reason, the Bank, although action would have been timely, declined effective collection procedure as is shown by the Accountant's Report: . . ."

To this finding, the defendant bank strenuously objects and alleges that the court's judgment premised on this finding is erroneous. We agree. In the first place, the question of lack of legal notice of default and negligent collection by the bank were never issues as framed by the pleadings or incorporated as issues during the trial before the court. The fact is that on one occasion the court sustained an objection when a witness was questioned on the subject of the bank's collection efforts. The court therefore refused to recognize it as an issue. In *McPhee v. United States*, 64 Colo. 421, 174 P. 808, this court said:

"The court's action in the premises was error. The question was not at issue, because the court had as heretofore stated refused to permit the issue to be made."

█ It is fundamental that findings of fact by the court should respond to and be within the issues, and that a finding outside the issues cannot be supported, and cannot be used to formulate a judgment. See 53 Am. Jur. *Trial* § 1144.

Furthermore, 1963 C.R.S. 95-1-89, which the court apparently had in mind when it referred to our "Uniform Negotiable Instrument Act," is not controlling on the issues involved here. In any event, the notes specifically provide for a waiver of notice of dishonor as provided in 1963 C.R.S. 95-1-109.

Schedule B of the accountant's report itemized the 35 promissory notes which remained partially or wholly unpaid. Included also are comments found on the individual ledger cards in the bank's records. These comments were by unnamed bank employees and related

to collection information applicable to the particular notes. In its findings, the trial court incorporated two of these comments as examples of negligent collection efforts. They are:

"2-2-59 W.A.W. says not to turn over to collection agency. Might start legal difficulty."

"8-27-58: J.S. says it would be best to wait until case is settled — any contact on our part might be against us."

The court then went on to state that several other such instances appear in the accountant's report and that therefore, the court finds the plaintiff should recover the sum of $24,269.14 from the defendant bank on the 22 promissory notes which the court found were subject to the charge of negligent collection.

It should be pointed out that the accountant made no finding as to negligent collection but did make the following statement which appears to somewhat negate negligent collection:

"It was noted that in most cases, extensive efforts had been made by employees of the defendant bank to collect delinquent notes."

The court therefore formulated its own finding from bank employees' comments on the ledger cards without the benefit of any evidence during the trial. The accountant held no hearing and therefore, even if he had made a finding of negligent collection, it would have been error for the court to adopt such a finding. *Oswald v. Dawn*, 143 Colo. 487, 354 P.2d 505.

Also, the $24,269.14 which the trial court found as damages is untenable. The face amount of the notes or the unpaid balances would not be the measure of damages on the issue of negligent collection, unless it was proven that the notes could have been fully collected and that negligent collection procedures were the cause of preventing full collection. It is obvious without commenting further that there was no competent evi-

dence whatsoever before the trial court to support the measure of damages it adopted.

██ The court's award of interest on the judgment from March 25, 1957 is clearly improper. It was on this date that the bank took over collection of the notes and proceeded to effect some collections. The notes were owned by the bank. The claim for damages because of negligent collection was not existent in any form on that date and has never been settled. It is unliquidated and therefore, 1963 C.R.S. 73-1-2 which allows 6% interest on certain liquidated claims and for money due and owing, is not applicable. There is no other statutory provision allowing interest on unliquidated claims of this category prior to settlement either by mutual agreement or court judgment.

██ Finally, we deem it necessary to recognize as plain error, the court's adoption of a finding by the accountant that the sum of $8,282.39 is a proper interest charge against the reserve account. In this regard, there is no evidence revealing what the interest arrangement was between the bank and the plaintiff. Item 2 of the Letter is ambiguous. The accountant's report merely states that he computed the interest due the bank from March 15, 1957 through March 31, 1961 and determined the same to be $8,282.39. If the bank was entitled to interest under the plan outlined in the Letter, the court before it adopted the statement of the accountant should have on its own motion held a hearing for the purpose of a finding which would define the interest arrangement between the parties.

\* \* \* \* \*

The judgment for the defendant bank on Claim No. 2, and the judgments for Defendant Woods on Claim Nos. 4 and 5 are affirmed.

The judgment for the plaintiff on Claim No. 3 is reversed and the cause is remanded for a new trial for the sole and only purpose of settling and determining the amount of the balance in the reserve account to which

the plaintiff is entitled, after proper debits and credits are allowed for such items as established by evidence to be applicable to the transactions consummated between the plaintiff and the defendant bank. In the court's discretion, it may allow the parties to file amended pleadings on this one remaining issue.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE PRINGLE concur.