Melvin James SPRUNG, Jr.,
Plaintiff-Appellant,

v.

NEGWER MATERIALS, INC.,
Defendant-Respondent.

No. 68670.

Supreme Court of Missouri,
En Banc.

April 14, 1987.

Charles Merz, Godfrey P. Padberg, St. Louis, for plaintiff-appellant.

Albert E. Schoenbeck, Brent W. Baldwin, St. Louis, for defendant-respondent.

ROBERTSON, Judge.

Plaintiff, Melvin J. Sprung, Jr., appeals from an order of the circuit court sustaining defendant's motion to set aside, on "equitable grounds", a final default judgment entered against defendant. Defendant, Negwer Materials, Inc., cross-appeals from that part of the circuit court's order overruling defendant's Motion to Set Aside Judgment for Irregularity.

The Court of Appeals, Eastern District, affirmed the order denying the motion to set aside the judgment for irregularity and reversed the order setting aside the judgment on "equitable grounds" with direction to reinstate plaintiff's default judgment. We granted transfer and have jurisdiction. Mo. Const. art. V, § 10. At issue are the jurisdiction of the circuit court to set aside the default judgment on equitable grounds and the propriety of the procedures employed by the circuit court in setting the default judgment aside.

We affirm the circuit court's order overruling defendant's Motion to Set Aside Judgment for Irregularity. We also reverse the order setting aside the default judgment on "equitable grounds," but remand the cause with directions to treat defendant's Motion to Set Aside Final Judgment of Default on equitable grounds as a petition in equity.

## I.

On December 27, 1984, plaintiff filed a petition in the circuit court for damages

sustained when a cart, which was rented from the defendant, tipped over and threw drywall on the plaintiff. Defendant was personally served on January 11, 1985. Defendant delivered the suit papers to his insurance company which, in turn, delivered them to a law firm. On January 31, 1985, a partner in the law firm dictated an entry of appearance and request for extension of time to plead. A secretary typed the documents and delivered them to the partner for his signature. Defendant asserts that the documents were returned to the secretary, who, instead of mailing them to the clerk of the circuit court, allegedly mailed the original documents to the insurance company by mistake. Neither the clerk of the circuit court nor plaintiff's attorney ever received the entry of appearance and request for extension of time to plead from the defendant.

On February 28, 1985, the circuit court entered an interlocutory judgment of default against defendant. On March 11, 1985, the circuit court conducted a hearing, at which defendant did not appear, to consider the issue of damages. Following testimony of the plaintiff, the circuit court entered a final judgment by default in the amount of $1,500,000 for injuries sustained by plaintiff.

On April 22, 1985, defendant's counsel was informed by the plaintiff's counsel that a final judgment had been entered on March 11, 1985. On May 3, 1985, the defendant filed two motions to set aside the default judgment. The court entered the following order:

Defendant's Motion to Set Aside Default Judgment for Irregularity overruled. Defendant's Motion to Set Aside Default Judgment on Equitable Grounds sustained. Default Judgment previously granted plaintiff set aside and held for naught. Defendant has shown that it had a good excuse for being in default, had a meritorious defense, and plaintiff will not be substantially harmed by the delay resulting from setting aside the default, and therefore is entitled to have this cause decided on the merits. *Murray v. Sanders,* 667 S.W.2d 426 (Mo.App. 1984).

These appeals followed.

## II.

We recognize six methods to set aside an otherwise final default judgment: (1) a separate suit in equity, (2) a petition for review under Rule 74.12, (3) a nunc pro tunc order, (4) a motion in the nature of a writ of error coram nobis, (5) a motion under Rule 74.32, and (6) a motion to set aside for fraud. *Kranz v. Centropolis Crusher, Inc.,* 630 S.W.2d 136, 138–39 (Mo.App.1982); *Godsy v. Godsy,* 565 S.W.2d 726, 732 (Mo.App. 1978); *Diekmann v. Associates Discount Corp.,* 410 S.W.2d 695, 700 (Mo.App.1966). Of these, defendant has invoked Rule 74.-32, and, by motion, sought to initiate a separate suit in equity.

### A.

Defendant contends that the plaintiff's original petition failed to state a cause of action and that this defect in the petition is an irregularity within the scope of Rule 74.32.

Rule 74.32 provides:

Judgments in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within three years after the rendition thereof.

The irregularity contemplated by the rule must be patent on the record and must not depend on proof beyond the record. *Casper v. Lee,* 362 Mo. 927, 245 S.W.2d 132, 138 (Mo. banc 1952).[1] "[I]rregularities are not ordinary judicial errors in a judgment that are reached through proper procedures." *Barney v. Suggs,* 688 S.W.2d 356, 359 (Mo. banc 1985). Thus, Rule 74.32 provides no basis for review of judicial errors committed in the rendition of a judgment.

■ A judgment rendered upon a petition which fails to state a cause of action

---

1. Discussing § 511.250, RSMo 1949, a statutory predecessor of Rule 74.32.

indicates judicial error. *Casper*, 245 S.W.2d at 140. Our courts have repeatedly held that "failure of a pleading to state facts upon which relief can be granted is not an 'irregularity' within the meaning of this type of proceeding." *Falcon Enterprise, Inc. v. Precise Forms, Inc.*, 509 S.W.2d 170, 172 (Mo.App.1974), citing *State ex rel. Ozark County v. Tate*, 109 Mo. 265, 18 S.W. 1088 (1892); *Casper*, 362 Mo. 927, 245 S.W.2d 132.

The trial court properly overruled defendant's Motion to Set Aside Judgment for Irregularity.

### B.

Plaintiff contends that because the thirty days provided in Rule 75.01 had elapsed, the trial court was without jurisdiction to sustain appellant's Motion to Set Aside Final Judgment of Default on equitable grounds.

### 1.

Rule 75.01 provides, in pertinent part, that "the trial court retains control over judgments during the 30–day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend or modify its judgments within that time period." The only authority cited by the trial court in setting aside the default judgment on equitable grounds is *Murray v. Sanders*, 667 S.W.2d 426 (Mo.App.1984).

In *Murray*, the defaulting defendant filed its motion to set aside the default judgment 16 days after the entry of that judgment. The trial court issued its order refusing to set aside the default judgment within the 30 days provided by Rule 75.01. On appeal, the Court of Appeals reasoned

that the propriety of setting aside a default judgment within the time provided by Rule 75.01 is a matter "left to the discretion of the trial court and the trial court's ruling is to be interfered with by the appellate court only for abuse of discretion...." *Murray*, 667 S.W.2d at 427. Thus, the court applied the same standard as would be applied under equity to find that the trial court abused its discretion in refusing to set aside the default judgment.

■ *Murray* provides no authority[2] for the trial court to set aside the default judgment in this case, where the 30 days provided by Rule 75.01 had expired prior to the filing of defendant's motions. After the expiration of the 30 days provided by Rule 75.01, the trial court had no jurisdiction to rule on the motions. Nor is the proper standard of review abuse of discretion.[3] Under the circumstances of this case, once the trial court lost jurisdiction, only a new petition in equity could provide the necessary jurisdiction for the trial court to proceed.

We turn now to the question whether the trial court could treat the Motion to Set Aside Final Judgment of Default as an independent petition in equity.

### 2.

Default judgments have been particularly troubling to our appellate courts over the years. Fundamental and competing interests are at stake. One commentator observes that

[i]f the courts are too lenient with the party in default, the rules of procedure will not be complied with and litigation will become increasingly inefficient. Furthermore, a primary goal of the judicial system is finality. Litigation must

---

**2.** *Whitledge v. Anderson Air Activities, Inc.*, 276 S.W.2d 114 (Mo.1955), cited by Judge Donnelly in his dissent, arises from a motion filed nine days after the entry of a default judgment and within the time allowed for filing motions for new trial. As is *Murray*, *Whitledge* is inapposite.

**3.** The obvious fallacy of Judge Welliver's application of the abuse of discretion standard in his dissenting opinion is its failure to distinguish between motions filed within the time allowed under Rule 75.01 and those filed after that time has expired—and after the trial court's judgment has become final.

end if the public is to have confidence in the court's ability to resolve disputes. If judgments are too easily vacated, then the public will not be able to rely on the court's decisions to formulate a future course of conduct. On the other hand, a primary goal of the judicial system is to seek the truth and to do justice between the parties. To promote this goal a case must be decided on the merits; procedural 'niceties' should not pose insurmountable barriers. These competing goals of efficiency, finality, and justice must be carefully balanced to ensure the public's confidence in the court system.

Laughrey, Default Judgments in Missouri, 50 Mo.L.Rev. 841, 843–44 (1985) (footnotes omitted).

The judicial struggle with this issue is evident by even a cursory reading of its historical treatment by appellate courts in this state. In this regard, we are blessed with two thoughtful, historical summaries: *J.R. Watkins Co. v. Hubbard*, 343 S.W.2d 189, 192–94 (Mo.App.1961), and Comment, Procedure—Setting Aside Final Judgments in Missouri, 28 Mo.L.Rev. 281, 299–305 (1963). We need not repeat their work here.

Instead, it is sufficient to acknowledge that the early jurisprudence of this state recognized a motion to set aside a default judgment on grounds of fraud and mistake as "the proper proceeding", even when the judgment was taken in a preceding term[4] of court. *Downing v. Still*, 43 Mo. 309, 319–20 (1869).

In 1914, this Court decided *Jeude v. Sims*, 258 Mo. 26, 166 S.W. 1048 (1914), casting doubt on *Downing*. In dicta, the Court said:

Counsel for respondents [defendants] do not seriously contend in their brief that this proceeding is one in equity to set aside a judgment for fraud.... To have invoked equity would have meant the bringing of an independent action.... As this is not a bill in equity upon its very face, it is useless to discuss the question whether or not it states facts sufficient to constitute a good bill in equity.

166 S.W. at 1053. *Jeude* does not discuss whether the court could treat a motion invoking equity as an independent petition in equity.

Within a decade of *Jeude*, however, two cases contained language which seemed to answer the question affirmatively. In *Scott v. Rees*, 300 Mo. 123, 253 S.W. 998, 1000 (1923), acknowledging *Jeude*, this Court said:

While it is true that ordinarily motions in a cause both before and after judgment are not pleadings or part of the record unless made so by being incorporated in a bill of exceptions, yet motions, even though in the same case, may initiate independent proceedings, in which case they are in the nature of pleadings and will be so considered....

See also *Audsley v. Hale*, 303 Mo. 451, 261 S.W. 117, 121 (1924) ("This court has held in several cases that a motion filed after the term at which the judgment was rendered to vacate the judgment either for irregularities on the face of the record or for matters dehors the record is of the nature of an independent proceeding....").

The Kansas City Court of Appeals decided *Hubbard*, 343 S.W.2d 189, in 1961. In that case, plaintiff took a default judgment on October 5, 1959. On October 14, 1959, defendant filed a motion to set aside the default judgment, alleging fraud in the procurement of the judgment. The trial court heard evidence, took the matter under advisement, and set aside the default judgment on May 19, 1960. The Court of Ap-

---

4. "Under the common law, a judgment remained in the breast of the court, so to speak, during the term at which it was rendered, and during the term, ... a judgment could be set aside or modified by the court as justice required." *Wooten v. Friedberg*, 355 Mo. 756, 198 S.W.2d 1, 5 (1946). For procedural purposes, terms have been abolished. The thirty days provided in Rule 75.01 replaces the term for purposes of trial court modification of its judgments.

peals viewed the motion as "an independent, separate suit, instituted by motion instead of petition." *Hubbard*, 343 S.W.2d at 191. The court relied on *Downing*, 43 Mo. 309, cases following *Downing*, and language in the (then) newly adopted Rules of Civil Procedure admonishing liberal construction in order to promote justice and the elimination of unjustifiable expense and delay, to find authority for a trial court to treat the motion as a separate suit in equity. The court concluded:

> Courts regard proceedings raised by a motion in the nature of a writ of error coram nobis, filed in the original action, as a separate suit directly attacking the judgment.... Consistency directs the same treatment of defendants' pleading. It likewise is filed in the original court, for the same purpose, also as a direct attack on the judgment, but on equitable grounds. The remedy should be as readily extended as an instrument of relief from intentional wrong as from honest mistake [5]—fraud being one of the special abhorrences of the law.

*Hubbard*, 343 S.W.2d at 195–96.

*Hubbard* involved a judgment procured by extrinsic fraud. It might be argued that *Hubbard* is limited to motions to set aside judgments procured by fraud. See Comment, 28 Mo.L.Rev. at 305. ("Although *Watkins v. Hubbard* provides direct authority for the use of a motion to set aside for fraud rather than a separate suit in equity, quite probably a petition in equity is the safe route and the one most likely to be approved under the present state of the law").

Our appellate courts have not read *Hubbard* so narrowly and have "learned to look at the substance of the allegations contained in the defendant's motion to vacate and to ignore the defendant's labeling of the motion." *Laughrey*, 50 Mo.L.Rev. at 870. As a result, "the formal distinctions

between post-judgment remedies are beginning to fade." Id. Thus, for example, *Barker v. Friendly American, Inc.*, 606 S.W.2d 457, 458 (Mo.App.1980) cites *Hubbard* for the broader proposition that any motion directly attacking a judgment on equitable grounds is "unaffected by constraints of trial court jurisdiction." See also *Kranz*, 630 S.W.2d at 139–40 ("[E]quity may give relief ... when a wrong has been done through accident or mistake as readily as when there has been fraud in the concoction or procurement of a judgment.... Our procedural law is not so technical as [to require a separate suit in equity].... It is well established that a motion to set aside a judgment may be treated as a proceeding in equity...."); *Fulton v. I.T. & T. Corp.* 528 S.W.2d 466, 469 (Mo.App.1975) ("A motion to set aside a default judgment is in the nature of an independent proceeding and a direct attack on the judgment."); *Askew v. Brown*, 450 S.W.2d 446, 450 (Mo.App.1970) ("It is not important to give a specific name to this proceeding. It is a motion to set aside a default judgment. It is in the nature of an independent proceeding and a direct attack on the judgment."); *In re Jackson's Will*, 291 S.W.2d 214, 220 (Mo.App.1956) ("[A] motion to vacate makes a direct attack upon the judgment and is an *independent proceeding*, instituted by motion instead of a petition. Such motion takes the place of a petition and becomes a pleading from which the issues are gauged. Thus the proceeding assumes the dignity of a separate lawsuit, and denial of the motion constitutes a final judgment in itself.") (emphasis in original). These cases are, of course, consistent with *Downing*.

■ Equity will relieve a defendant of a default judgment for extrinsic fraud "and where a defendant is denied the occasion to present a meritorious defense by reason of accident, mistake, inadvertence, mischance

---

5. Coram nobis requires a showing that the trial court's judgment is based on a mistake of fact which, if known to the trial court, would have prevented the court from entering its judgment

on jurisdictional grounds. *Edson v. Fahy*, 330 S.W.2d 854 (Mo.1960); *Francois v. Francois*, 612 S.W.2d 794 (Mo.App.1981).

or unavoidable circumstances *unmixed with neglect or inattention....*" *Hamm v. Hamm,* 437 S.W.2d 449, 453 (Mo.App.1969) (emphasis in original). We see no reason to make a distinction between a motion alleging fraud and a motion alleging other grounds sufficient for equitable relief in determining whether a court has jurisdiction to grant relief. We find no compelling appellate court precedent in our jurisprudence which dictates a contrary result.

We, therefore, believe the trial court had jurisdiction to treat defendant's Motion to Set Aside Default Judgment on equitable grounds as an independent suit in equity, provided the Motion sufficiently pleaded grounds for equitable relief.

### III.

 Equity requires that the defendant show a meritorious defense, good reason or excuse for the default and that no injustice will accrue to the plaintiff as a result of the delay occasioned by setting aside the judgment. *Whitledge v. Anderson Air Activities, Inc.,* 276 S.W.2d 114, 116 (Mo.1955); *Murray,* 667 S.W.2d at 428. We have carefully reviewed defendant's Motion to Set Aside Final Judgment of Default on equitable grounds. Defendant avers a meritorious defense, good cause for its failure to answer, and the absence of significant harm to plaintiff if the judgment is set aside. The motion is sufficient to invoke the equitable powers of the court; it may be treated as an independent suit in equity.

 If, however, defendant's motion is to be accorded the status of a petition, the proceedings that follow must be consistent with that status. Defendant is required not only to plead its cause, but also to prove it. And plaintiff is entitled to defend his judgment vigorously and to labor to defeat defendant's equitable claims. Thus,

plaintiff is entitled to the full panoply of procedures established by our Rules, including the opportunity to join the issues by filing an answer to defendant's motion, to conduct discovery and to present evidence on contested issues at a hearing. We find no evidence in the record that the trial court ever notified plaintiff that it was treating the motion as an independent petition in equity.[6] In failing to conduct itself in accordance with the Rules of Civil Procedure, the trial court erred in setting aside the default judgment entered against defendant March 11, 1985.

Judge Donnelly's dissent cites *Robinson v. Clements,* 409 S.W.2d 215 (Mo.App. 1966), as authority for the trial court setting the final default judgment on a motion filed after the expiration of thirty days provided in Rule 75.01. *Robinson* is not inconsistent with our result, however.

In *Robinson,* plaintiff obtained a default judgment on July 1, 1965. Defendant filed a motion to set aside on August 13, 1965, alleging, among other things, fraud in the procurement of the judgment. The trial court conducted a hearing at which the attorney for the plaintiff conceded the essential elements of the fraud. Relying on *J.R. Watkins Co. v. Hubbard,* 343 S.W.2d at 192, as authority for setting aside a default judgment on equitable grounds, the Court of Appeals affirmed.

> It is our opinion, too, that plaintiff's counsel overreached defendants where, *as conceded,* he represented that defendants were without counsel, and when he agreed and promised the court to notify defendants of the default but did not do so until after the judgment had become final.

409 S.W.2d at 221 (emphasis added). Plaintiff's concession eliminated any question of fact which might otherwise have remained. There being no dispute as to the facts, the

6. With a prescience with which most are not gifted, Judge Welliver concludes that the trial court had before it all the evidence necessary to make an appropriate judgment on defendant's equitable claims. Given the fact that plaintiff has had no opportunity to contest the issues, we cannot share his confidence about the outcome of the proceedings on remand and are unwilling, at this juncture, to determine the merits on the incomplete record before us.

Court of Appeals addressed the legal question appropriately.

Unlike *Robinson*, we do not have before us in this case all the facts necessary to determine whether equitable grounds exist for setting aside the default judgment. Defendant's motion does not aver fraud in the procurement of the judgment. Instead, defendant claims that its failure to answer resulted from mistake, inadvertence, mischance, or accident. Plaintiff does not concede that defendant's failure to answer proceeded from "accident, mistake, inadvertence, or unavoidable circumstance *unmixed with neglect or inattention*." *Hamm v. Hamm*, 437 S.W.2d at 453 (emphasis in original). Whether defendant had a good cause or excuse for its inattention is a factual matter not fully addressed in the proceedings before the trial court. Further proceedings are required.

### IV.

We affirm the circuit court's order overruling defendant's Motion to Set Aside Judgment for Irregularity. The order of the circuit court sustaining defendant's Motion to Set Aside Final Judgment of Default on equitable grounds is reversed. The cause is remanded to the circuit court with directions to treat defendant's Motion to Set Aside Final Judgment of Default as a petition in equity and for such further proceedings as may be consistent with this opinion.

HIGGINS, C.J., and BILLINGS, J., concur.

BLACKMAR and RENDLEN, JJ., concur in separate opinions.

DONNELLY, J., dissents in separate opinion.

WELLIVER, J., concurs in part and dissents in part in separate opinion and concurs in dissenting opinion of DONNELLY, J.

BLACKMAR, Judge, concurring.

I concur, because counsel for the appellant represents to us that he has not had a full opportunity to present evidence in opposition to the respondent's claim. Judge Robertson shows substantial support in case law to the effect that a court may treat a motion to vacate a judgment, not explicitly provided for by the rules, as a suit in equity, even though other cases suggest that an independent action is necessary. Because of questions about appropriate procedures, the parties below may not have fully understood the scope of the court's authority, or their entitlements and responsibilities at the hearing. The simple remedy is a full and complete evidentiary hearing, at which each party may outline his contentions and present evidence.

Inasmuch as there is to be a further hearing, the principal opinion expresses no conclusion as to the merits. This is appropriate. The facts set out in Judge Donnelly's and Judge Welliver's dissenting opinions accurately reflect the state of the record and persuade me that the defendant-respondent has stated a claim for equitable relief. The principal opinion so states. I agree with the statements set out in the last two paragraphs of Judge Donnelly's opinion. Perhaps additional evidence will add little to the record now before us, but I am unwilling to rule with finality until the appellant has had the chance to cross-examine the respondent's witnesses and to introduce such evidence as he is disposed to. The trial court may then balance the equities on the basis of all of the evidence.

RENDLEN, Judge, concurring.

I concur with the principal opinion in its affirmance of the order denying defendant's motion to set aside the default judgment for irregularity. Further, I agree with the reversal of the circuit court order sustaining defendant's Motion to Set Aside Final Judgment of Default on equitable grounds and I am satisfied the majority opinion is correct in treating defendant's Motion to Set Aside Final Judgment of Default as a petition in equity. However, I feel it is unnecessary that there be further proceedings and believe there can be rever-

sal of the order setting aside the default judgment on equitable grounds without the necessity of a hearing in the trial court. But though inclined to direct that the original judgment be reinstated as a final judgment in the case, I nevertheless concur for the reasons hereinafter discussed.

The suit commenced by petition filed in the circuit court on December 27, 1984, and there is no dispute that defendant was personally served on January 11, 1985, and that defendant delivered the summons with petition attached to its liability insurance company. The insurance company delivered the same to a law firm of its choice and on January 31, 1985, a partner in the firm dictated an entry of appearance and request for a thirty-day extension of time to plead. We further learn from the record that on February 1, 1985, a secretary typed the documents and delivered them to the partner for signature. Defendant asserts that on that day the documents were returned to the secretary who, instead of mailing them to the clerk of the circuit court, mistakenly mailed the original documents to the insurance company together with the photocopies. The insurance company allegedly received these items on February 4 but neither the clerk of the circuit court nor plaintiff's attorneys received any "entry of appearance" nor a "request for extension of time to plead." More than thirty days following service, the circuit court on February 28 entered an interlocutory judgment of default against the defendant and eleven days later, on March 11, the circuit court conducted a hearing to consider the issue of damages. At that hearing, plaintiff presented testimony that his injuries included severe compression of the tenth and eleventh thoracic vertebrae, torn ligaments in his right knee and a hairline fracture in his back. A Harrington rod spinal fusion in which two rods were inserted alongside the spine was performed on the plaintiff's back and an arthrotomy was undertaken to repair torn ligaments in the right knee. Detailed evidence concerning hospitalization, surgery, loss of work and other special damages was presented and after the March 11 hearing, final judgment of default in the amount of $1,500,000 was entered. Defendant's counsel was informed by plaintiff's counsel on April 22 that a final judgment had been entered on the date set out above. On May 3 defendant filed two motions attacking the judgment whereupon the court entered the following order:

Defendant's Motion to Set Aside Default Judgment for Irregularity overruled. Defendant's Motion to Set Aside Default Judgment on Equitable Grounds sustained. Default Judgment previously granted plaintiff set aside and held for naught. Defendant has shown that it had a good excuse for being in default, had a meritorious defense, and plaintiff will not be substantially harmed by the delay resulting from setting aside the default, and therefore is entitled to have this cause decided on the merits. *Murray v. Sanders*, 667 S.W.2d 426, 428 [ (Mo.App.1984) ].

In an affidavit of defendant's attorney's secretary which accompanied defendant's motions of May 3 the secretary claimed to have no "knowledge or recollection" of what happened to the documents after she delivered them to the partner for his signature. Defendant asserts that the partner returned the documents to the secretary for mailing, but instead of mailing them to the clerk of the circuit court she "apparently" mistakenly mailed the originals to the insurance company. Whatever the events may have been, neither the clerk of the circuit court nor plaintiff's attorney received defendant's entry of appearance nor its request for extension of time to plead.

It was the "custom and practice" of the insurance company, and defendant's counsel, that counsel transmit *two copies* of all pertinent documents to the insurance company and send originals thereof to the clerk of the circuit court for filing. Nonetheless, the insurance company neglected to note that it had received the *original* and one copy of each document or if it so observed it failed to communicate this fact to its

attorney. By such action, in theory, it could be argued that the insurer successfully "concealed" this fact from its chosen attorney for it was only after the attorney inspected the insurance company's file that he discovered the documents in that file were the originals and copies rather than the photocopies which he intended should be there. From this we are not told where the service copy (if any) intended for delivery to plaintiff's counsel finally found repose.

The time for responsive pleading under Rule 75.01 had expired prior to the filing of defendant's motions and because the trial court lost jurisdiction to entertain the motion, only a new petition in equity could provide the basis for the trial court to proceed. In this connection, I agree with the majority in its determination to treat defendant's motion to set aside default judgment on equitable grounds as an independent suit in equity (provided the motions sufficiently pleaded grounds for equitable relief) however, a strong showing has been made indicating the original judgment for plaintiff should be reinstated. Arguing the equities, defendant suggests that plaintiff or his attorney had a duty to inform the defendant of the default after it had occurred. It is urged that plaintiff's "conscious" decision not to inform the defendant of the default judgment serves as ground for reversal. However, from the record, the only official notice to the plaintiff that defendant was represented by counsel was defendant's answer apparently filed on March 23, 1985, or the discovery motions filed on March 28, 1985, seventeen days after final default judgment had been rendered. In this regard it should be emphasized that during all of the time between December 27, 1984, when the case was filed and March 23 or 28, 1985, defendant's insurer knew, or by any reasonable conduct on its part could have known, that the papers in its file (received on February 4, 1985) were the original document and yet the insurance company did nothing. If it did not fully understand the significance of these facts, the claims department of the liability insurance company, whose regular business it is to deal with such matters, should have made some inquiry with its attorney to resolve questions concerning the same.

Thus it was in the control of defendant's insurer to discover the mistake but it compounded that mistake during February and March by failing to examine the records in its hands. While it is incorrect to characterize the action of the insurance company as "concealment" it certainly points up the fact that it comes in bad grace and dilutes defendant's "equitable" argument that in all this it was somehow plaintiff's attorney's burden to inform the defendant of the default.[1] From the record the only notice to plaintiff showing defendant was represented by counsel was the answer and defendant's discovery motions, filed after final default judgment had been entered.

Another important question immediately comes to mind: what action, if any, had been taken by the defendant's insurance company or defendant's counsel concerning the "request for extension of time to plead?" The record shows no extension of time was granted. Defendant who mistakenly assumed its time had been enlarged by thirty days is certainly charged with knowing that the "additional" thirty-day period was ending, yet took no effective action to secure any additional time. And after the second thirty-day period elapsed still no action was taken. If defendant had made the most cursory check of the record in the clerk's office it would immediately have ascertained it was in default on both the original answering period and the hoped for thirty-day extension and would have learned that the motion for extension of time and the entry of appearance had gone astray. Yet for seventy days (January 11 through March 22) it made no such inquiry

---

1. Just as it is inaccurate to characterize the action of the insurance company as "concealment," it is equally inappropriate to speak of plaintiff and his attorney's action as "concealment" as Welliver, J., does in his separate opinion.

and filed no responsive pleading. In sum nothing was done, no extension of time was granted and no effort on behalf of defendant was taken to followup or ascertain these facts. This weakens the equitable argument which the liability insurance company and the defendant now make and by which they seek to shift the responsibility onto plaintiff and plaintiff's counsel, arguing that local custom and courtesy require an attorney to inform his adversary of a default. Against this the Code of Professional Responsibility states that "[a] lawyer shall not intentionally" "[f]ail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules." Rule 4 DR 7–101(A)(1). The well settled interpretation of this rule is that a lawyer owes a duty to his client to represent him zealously within the bounds of the law. *See* Rule 4 EC 7–1. It appears that to require an attorney to inform his adversary of a default stands athwart the attorney's duty to zealously represent his client. Furthermore, we learn from the record that the plaintiff and his attorney discussed the possibility of communicating with the defendant, but plaintiff instructed his attorney not to communicate with defendant until final default judgment had been obtained. The basic rule is that when an attorney is specifically instructed by the client the attorney must follow these instructions, if lawful, with reasonable care and promptness or risk possible liability for damages proximately caused by the attorney's failure.

Assuming arguendo, plaintiff's attorney was obligated to contact defendant's attorney after receiving the answer and motions for discovery, the only effect which defendant can claim such contact would have had is that defendant then could have timely moved to set aside the default judgment in the trial court within the thirteen days remaining under Rule 75.01. The Court has considered and ruled defendant's claim of "irregularity" and today has granted defendant the hearing which it claims it was "unfairly denied." It is therefore incorrect to suggest that any actions or omissions on plaintiff's attorney's part can be said to be any longer relevant to the question of a hearing on the equitable issues.

Additionally, it is noteworthy that defendant did not file answer until March 23, 1985. Defendant argues that it reasonably believed it had an extra thirty days to answer plaintiff's petition beyond the normal thirty days. Defendant was personally served on January 11 and sixty days expired March 12. Defendant did not mail its answer for filing until March 21 and it is not clear how defendant calculates that its motion for a thirty-day extension would have given it until March 21 to file such answer.

The majority has determined that a further hearing to investigate the equities and the question of excusable neglect is required, and with the reservations enunciated above, I concur.

DONNELLY, Judge, dissenting.

Given the holding in *Bates* and *O'Steen v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), it may border on the ridiculous to speak of the practice of law as a profession and not a business.

However, being somewhat old-fashioned, I must express the view that a lawyer does not inevitably violate his obligation to seek the lawful objectives of his client when he treats opposing counsel with courtesy and consideration.

The position of The American Law Institute is that if "the party obtaining the judgment was on notice of facts indicating the neglect of the attorney * * *, that is a factor weighing in favor of relief." Restatement (Second) of Judgments § 67 (1982).

In this case, attorney for plaintiff took a default judgment in the amount of $1,500,-000 on March 11, 1985. He was on notice of facts indicating the neglect of opposing counsel on March 29, 1985, when discovery motions were filed but was instructed by

his client "to protect his judgment." On April 22, 1985, after time had run under Rule 75.01, he advised opposing counsel of the default judgment. On May 3, 1985, motions to set aside the default judgment were filed. *See Robinson v. Clements*, 409 S.W.2d 215, 220 (Mo.App.1966). The trial court, in its discretion set aside the default judgment and, in my view, corrected what must be considered a miscarriage of justice.

"The action of a trial court in sustaining or overruling a motion to set aside a default judgment is generally within the trial court's sound judicial discretion. * * * [And] it has been said that an appellate court is less apt to interfere when a judgment is set aside than when it is not. This is because, when the judgment is set aside, the case is reopened and justice will yet be done by a trial on the merits. * * *." *Whitledge v. Anderson Air Activities*, 276 S.W.2d 114, 116 (Mo.1955).

If I may conclude with a personal observation:

Judges at times become so enamored of jargon in codes of "professional" responsibility that they forget what it was like to practice law. Here, the attorney for plaintiff was directed by his client to conceal the taking of the default judgment from his brother lawyer. What was he to do in such circumstance? Should he have invited the wrath of his client and risked a claim of malpractice? Had he acted as a professional and not as a hired representative who did solely the bidding of his client, would/could this Court have protected him?

Of course, the equity due *the parties*, not the attorneys, is at issue here. And it was plaintiff Sprung who insisted on concealment and gained the advantage. In my view, equity demands that we affirm and require the parties to resolve their controversy by a trial on the merits.

I respectfully dissent.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in that part of the principal opinion which affirms the trial judge's action in treating defendant-respondent's motion to set aside the default judgment on equitable grounds as a petition in equity to set aside the default.

In this connection, the dissenting opinion of Crist, J., Court of Appeals, Eastern District, is adopted and made a part hereof and appended and marked as Appendix A hereto. I also concur in the dissent of Donnelly, J., filed herein.

I dissent from all of the remainder of the principal opinion which would reverse the trial court's order setting aside and vacating the default judgment. I dissent for the reason that the principal opinion ducks rather than decides the gut issue which appellant asks us to decide. That issue is whether appellant's default judgment shall be reinstated. This Court is Missouri's highest Court, its Court of last resort. The buck should not be passed from here, the buck should stop here. This decision is our responsibility.[1]

I am deeply concerned when the principal opinion so carefully avoids identifying the attorneys while purporting to decide the case based on the rights of the parties. I am even more concerned when the opinion then passes the buck back to a trial judge saying:

> defendant [defendant's attorney] claims that its failure to answer resulted from mistake, inadvertence, mischance or accident. Plaintiff does not concede that defendant's failure proceeded from 'accident, mistake, inadvertence, or unavoidable circumstance mixed with neglect or inattention.' .... Whether defendant [defendant's attorney] had a good cause or excuse for its inattention is a factual matter.... Further proceedings are required.

*Sprung*, 727 S.W.2d 883, 890 (Mo. banc 1987).

---

**1.** It should be noted that the trial judge ordering the default vacated was Hon. George Adolph, now deceased, and any remand will be to another circuit judge.

Clearly the principal opinion directs the trial judge to decide the issue based upon the conduct of the unnamed attorneys. If the conduct of the attorneys is to be decisive, then maintaining public confidence in the judiciary requires full and complete public disclosure of the identity of all of the players.

The file reflects that Padberg, McSweeney, Slater and Merz (Padberg) is the attorney for the plaintiff and Kortenhof and Ely (Ely) was the original attorney for defendant. Defendant-respondent's present attorneys were employed after the default became final and were not involved in the litigation prior to that time. Padberg and Ely have offices in the same building. The last major default case, a case involving a default for $300,000 against a dentist, *Barney v. Suggs*, 688 S.W.2d 356, (Mo. banc 1985), was also brought to this Court by attorney Padberg. Godfrey Padberg has been a member of the Commission on Retirement, Removal and Discipline of Judges,[2] since its creation in 1972, serving as its Chairman in recent years.

The true sensitivity of this case was pointed up by Padberg's partner Merz, who argued the case in our Court. He told the Court that, in view of the fact an issue had been raised as to whether Padberg should have told Ely of the default sooner, Padberg felt that it was best someone else make the appearance in our Court on his behalf.

We are powerless to undo those things which create the extremely sensitive nature of the matters coming before us. We can only recognize that the more sensitive the issue before us, the greater is our obligation to openly, promptly and directly decide the matter in this Court. Maintaining public confidence in the judiciary demands that we do no less.

Two things appear extremely clear from the record before us. One is that we presently have before us all of the facts which are relevant and necessary for the determination of the default issue. Second, it is clear that the plaintiff, Sprung, would not be prejudiced by this Court affirming the trial judge's order setting aside the default and ordering trial on the merits.

There is nothing that defendant-respondent could add to the affidavits filed by its attorneys. Plaintiff-appellant was offered an opportunity to file counter affidavits and declined to do so. I do not believe that appellant could add anything to his statement made in brief and clearly set forth in the court of appeals principal opinion. Upon learning of respondent's attorney's appearance in the proceeding on the eighteenth day of the thirty day period provided for by Rule 75.01, Padberg discussed with his client the respondent's appearance in the case and "[t]he plaintiff specifically instructed his attorney not to communicate with the defendant until a final default judgment had been obtained." There is not the slightest possibility or suggestion that either side has withheld relevant facts justifying its position. There is no possibility that a hearing on remand will develop relevant facts not now known by this Court.

It is equally clear that there is not one line of evidence in the record before us that plaintiff could be hurt, damaged or prejudiced by the passage of the brief period of time involved in the trial court's setting aside the default and ordering the matter tried on its merits. All other delay has resulted from plaintiff's voluntary choice to gamble time on the possibility of reinstating and affirming the default.

While members of this Court may not agree with the conclusion of the trial court, it is not the role of this Court to replace trial judges' decisions with its own merely because some of its members might have reached a different conclusion had they been the trial judge. "The Supreme Court has many times stated and enforced the proposition that large discretion rests with the trial court in acting on motions to set aside judgments by default. [*Iron Mountain*] *Bank v. Armstrong*, 92 Mo. 265, 280,

4 S.W. 720, and authorities cited." *Harkness v. Jarvis,* 81 S.W. 446, 448 (Mo.1904), *overruled on other grounds, State ex rel. Conant v. Trimble,* 311 Mo. 128, 277 S.W. 916 (1925).

>According to the views expressed in a number of decisions of this court from the earliest reports to the latest, there is nothing in this case which takes it from under the operation of the general rule that this court will not interfere with the discretion of the trial court, unless it manifestly appears that injustice has been done, and that the discretion has been arbitrarily exercised. (*Meechum vs. Judy,* 4 Mo. 361 and 540; *Faber vs. Bruner,* 13 Mo. 541; 55 Mo. 342; *Eidemiller vs. Kump,* 61 Mo. 340; *Obermeyer vs. Einstein,* 62 Mo. 341; *Jacob vs. McLean,* 24 Mo. 40).

*State ex rel. Reid v. Griffith,* 63 Mo. 545, 551 (1876). "[The trial court's] decision on the issue should be disturbed only if there is a showing of great abuse of its discretionary power. *Fulton v. I.T. & T. Corp.,* 528 S.W.2d 466, 469 (Mo.App.1975), *cert. denied,* 424 U.S. 913 [96 S.Ct. 1111, 47 L.Ed.2d 317] (1976)." *Robyn Marketing, Inc. v. Fjelstead,* 693 S.W.2d 239 (Mo.App. 1985). *See MISSOURI: Whitledge v. Anderson Air Activities,* 276 S.W.2d 114 (Mo.1955); *Harkness v. Jarvis,* 182 Mo. 231, 81 S.W. 446 (1904); *Robyn v. Chronicle Pub. Co.,* 127 Mo. 385, 30 S.W. 130 (1895); *Pry v. Hannibal & St. J.R. Co.,* 73 Mo. 123 (1880); *Obermeyer v. Einstein,* 62 Mo. 341 (1876); *Griffin v. Veil,* 56 Mo. 310 (1874); *Florez v. Uhrig,* 35 Mo. 517 (1865); *Kribben v. Eckelkamp,* 34 Mo. 480 (1864); *Brolaski v. Putnam,* 34 Mo. 459 (1864); *Ridgley v. The Reindeer,* 27 Mo. 442 (1858); *Jacob v. McLean,* 24 Mo. 40 (1856); *Christy's Adm'r v. Myers,* 21 Mo. 112 (1855); *Wagemann v. Jordan,* 19 Mo. 503 (1854); *Faber v. Bruner,* 13 Mo. 541 (1850); *Crockett v. Morrison,* 10 Mo. 515 (1847); *Laurent v. Mulliken,* 10 Mo. 312 (1847); *First Missouri Bank of St. Francois County v. Patterson,* 696 S.W.2d 800 (Mo.App.1985); *ALABAMA: J & P Constr. Co. v. Valta Constr. Co.,* 452 So.2d 857 (Ala.1984); *Ex parte Anderson,* 4 So.2d 420 (Ala.1941); *ALASKA: Allen v. Allen,* 645 P.2d 774 (Alaska 1982); *Alaska Truck Transport, Inc. v. Inter-Alaska Credit Service, Inc.,* 397 P.2d 618 (Alaska 1964); *ARIZONA: Hirsch v. National Van Lines, Inc.,* 136 Ariz. 304, 666 P.2d 49 (1983); *Central Bank of Willcox v. Willcox-Pima Overland Co.,* 188 P. 133 (Ariz. 1920); *ARKANSAS: Burrs v. Madden,* 271 Ark. 572, 609 S.W.2d 55 (1980); *Davis v. McBride,* 247 Ark. 895, 448 S.W.2d 37 (1969); *CALIFORNIA: Lynch v. Spilman,* 67 Cal.2d 251, 62 Cal.Rptr. 12, 431 P.2d 636 (1967); *Haight v. Green,* 19 Cal. 113 (1861); *COLORADO: Credit Inv. & Loan Co. v. Guaranty Bank & Trust Co.,* 166 Colo. 471, 444 P.2d 633 (1968); *Connell v. Continental Casualty Co.,* 87 Colo. 573, 290 P. 274 (1930); *CONNECTICUT: Manchester State Bank v. Reale,* 172 Conn. 520, 375 A.2d 1009 (1977); *DELAWARE: Battaglia v. Wilmington Sav. Fund Soc.,* 379 A.2d 1132 (Del.1977); *DISTRICT OF COLUMBIA: Waxler v. Levin,* 131 A.2d 294 (D.C. 1957); *Madden v. Horigan,* 66 A.2d 525 (D.C.1949); *Bush v. Bush,* 63 F.2d 134 (App.D.C.1933); *FLORIDA: Coggin v. Barfield,* 150 Fla. 551, 8 So.2d 9 (1942); *Russ v. Gilbert,* 19 Fla. 54 (1882); *GEORGIA: Cheeks v. Barnes,* 241 Ga. 22, 243 S.E.2d 242 (1978); *Thornton v. Hollis,* 36 Ga. 595 (1867); *IDAHO: Sysco v. Inter-Mountain Food Serv. v. City of Twin Falls,* 109 Idaho 88, 705 P.2d 548 (1985); *Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974); *ILLINOIS: Borman v. Oetzell,* 382 Ill. 110, 46 N.E.2d 914 (1943); *Greenleaf v. Roe,* 17 Ill. 474 (1856); *INDIANA: Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332 (Ind.1983); *Carlisle v. Wilkinson,* 12 Ind. 91 (1859); *IOWA: Gateway Transp. Co., Inc. v. Phillips & Phillips Co.,* 261 N.W.2d 175 (Iowa 1978); *Harrison v. Kramer,* 3 Iowa 543 (1856); *KANSAS: Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 598 P.2d 188 (1979); *Haight v. Schuck,* 6 Kan. 192 (1870); *KENTUCKY: Zimmerman v. Segal,* 288 Ky. 33, 155 S.W.2d 20 (1941); *Algee v. Algee,* 182 S.W. 197 (1916); *LOUI-*

SIANA: *Surgi v. McDonough Motor Express,* 187 So. 693 (La.Ct.App.1939); *MAINE: Cutillo v. Gerstel,* 477 A.2d 750 (Me.1984); *Maiorino v. Morris,* 367 A.2d 1038 (Me.1977); *MASSACHUSETTS: Kravetz v. Lipofsky,* 294 Mass. 80, 200 N.E. 865 (1936); *MICHIGAN: Seifert v. Keating,* 344 Mich. 456, 73 N.W.2d 894 (1955); *Federspiel v. Bourassa,* 151 Mich.App. 656, 391 N.W.2d 431 (1986); *MINNESOTA: Lyon Development Corp. v. Ricke's Inc.,* 296 Minn. 75, 207 N.W.2d 273 (1973); *Perrin v. Oliver,* 1 Minn. 202 (1854); *MISSISSIPPI: Stanley Home Products Co. v. Holmes,* 308 So.2d 918 (Miss.1975); *James v. Hall,* 197 So.2d 226 (Miss.1967); *MONTANA: Graham v. Mack,* 699 P.2d 590 (Mont.1984); *Davis v. Hubbard,* 120 Mont. 45, 179 P.2d 533 (1947); *NEBRASKA: Lincoln Welding Supply Co. v. Inhalation Plastics, Inc.,* 213 Neb. 862, 331 N.W.2d 804 (1983); *Mulhollan v. Scoggin,* 8 Neb. 202 (1879); *NEVADA: Sealed Unit Parts Co., Inc. v. Alpha Gamma Chapter of Gamma Phi Beta Sorority, Inc. of Reno,* 99 Nev. 641, 668 P.2d 288 (1983); *Howe v. Coldren,* 4 Nev. 171 (1868); *NEW HAMPSHIRE: Jamieson, Inc. v. Copeland Coating Co., Inc.,* 126 N.H. 101, 489 A.2d 613 (1985); *d'Agincourt v. Anderson Foreign Motors, Inc.,* 119 N.H. 476, 402 A.2d 1340 (1979); *NEW JERSEY: Benedetto v. Fleckenstein,* 108 N.J.L. 184, 154 A. 769 (1931); *Marder v. Realty Constr. Co.,* 84 N.J.Super. 313, 202 A.2d 175 (App.Div. 1964); *NEW MEXICO: New Mexico Educators Federal Credit Union v. Woods,* 102 N.M. 16, 690 P.2d 1010 (1984); *Bourgeious v. Santa Fe Trail Stages,* 43 N.M. 453, 95 P.2d 204 (1939); *NEW YORK: Markoff v. South Nassau Comm. Hosp.,* 61 N.Y.2d 283, 473 N.Y.S.2d 766, 461 N.E.2d 1253 (1984); *Ramsey v. Gould,* 4 Lans. 476 (N.Y.1871); *NORTH CAROLINA: Bank of Statesville v. Foote,* 77 N.C. 131 (1877); *Williams v. Jennette,* 77 N.C.App. 283, 335 S.E.2d 191 (1985); *NORTH DAKOTA: Federal Land Bank of St. Paul v. Lillehaugen,* 370 N.W.2d 517 (N.D.1985); *First State Bank of Crosby v. Thomas,* 54 N.D. 108, 208 N.W. 852 (1926); *OHIO: Terwoord v. Harrison,* 10 Ohio St.2d 170, 226 N.E.2d 111 (1967); *City of Middletown v. Campbell,* 21 Ohio App.3d 63, 486 N.E.2d 208 (1984); *OKLAHOMA: Chesnut v. Billings,* 452 P.2d 138 (Okla. 1969); *Nave v. Conservative Loan Co.,* 117 Okl. 85, 245 P. 65 (1926); *OREGON: Fleetwood Inv. Co., Inc. v. Thompson,* 270 Or. 580, 528 P.2d 518 (1974); *White v. Northwest Stage Co.,* 5 Or. 99 (1873); *PENNSYLVANIA: Schultz v. Erie Ins. Exchange,* 505 Pa. 90, 477 A.2d 471 (1984); *Horner v. Horner,* 145 Or. 258, 23 A. 441 (1892); *RHODE ISLAND: Phoenix Constr. Co. v. Hanson,* 491 A.2d 330 (R.I. 1985); *Lebanon Steel Foundry v. Efco Hydraulics, Inc.,* 100 R.I. 749, 219 A.2d 478 (1966); *SOUTH CAROLINA: McCall v. A–T–O, Inc.,* 276 S.C. 143, 276 S.E.2d 529 (1981); *Messervey v. Hillier,* 12 Rich. 483 (S.C.1860); *SOUTH DAKOTA: Squires v. Meade County,* 59 S.D. 293, 239 N.W. 747 (1931); *Evans v. Fall River County,* 4 S.D. 119, 55 N.W. 862 (1893); *TENNESSEE: Moore v. Palmer,* 675 S.W.2d 192 (Tenn.Ct. App.1984); *TEXAS: Johnson v. Edmonds,* 712 S.W.2d 651 (Tex.Ct.App.1986); *Thomas v. Goldberg,* 283 S.W. 230 (Tex.Civ.App. 1926); *UTAH: Larsen v. Collina,* 684 P.2d 52 (Utah 1984); *Enright v. Grant,* 5 Utah 334, 15 P. 268 (1887); *VERMONT: Greene v. Riley,* 106 Vt. 319, 172 A. 633 (1934); *WASHINGTON: Griggs v. Averbeck Realty, Inc.,* 92 Wash.2d 576, 599 P.2d 1289 (1979); *Livesley v. O'Brien,* 34 P. 134 (Wash.1893); *WEST VIRGINIA: Dotson v. Sears Roebuck & Co.,* 341 S.E.2d 832 (W.Va.1985); *Higgs v. Cunningham,* 71 W.Va. 674, 77 S.E. 273 (1913); *WISCONSIN: Maier Constr., Inc. v. Ryan,* 81 Wis.2d 463, 260 N.W.2d 700 (Wis.1978); *Crebler v. Eidelbush,* 24 Wis. 162 (1869); *WYOMING: Annis v. Beebe & Runyan Furniture Co.,* 685 P.2d 678 (Wyo.1984); *Barrett v. Oakley,* 40 Wyo. 449, 278 P. 538 (1929); *see also,* 5 Am.Jur.2d *Appeal & Error* § 854 (1962); 5A C.J.S. *Appeal & Error* § 1632 (1958); *cf. Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976);

Cases everywhere recognize that more deference should be given to the trial judge's action in setting aside a default

judgment than is given in cases where he declined to do so.[3] "[J]udgments by default are not favored.... The entry of a default judgment against a party litigant is a harsh and drastic remedy." *Lambert Bros. Inc., v. Tri-City Constr. Co.,* 514 S.W.2d 838, 841 (Mo.App.1974).

It has been said that an appellate court is less apt to interfere when a judgment is set aside than when it is not. *This because when the judgment is set aside, the case is reopened and justice will yet be done by a trial on the merits....* It is also thought that *there are no certain rules which will fit any and all cases—the facts and circumstances of each case* should be taken into account ...

*Whitledge v. Anderson Air Activities, Inc.,* 276 S.W.2d 114, 116 (Mo.1955) (emphasis added).

Padberg's statement that his client directed him to refrain from telling defendant or his counsel, Ely, of the default until after the default had become final and non-appealable and Padberg's statement that he was bound by his client's directions merits additional comment.

In 1985, the Code of Professional Responsibility, Supreme Court Rule 4, governed the ethical standard of the Bar.[4]

The Preamble of the Code provides, in part:

Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. *A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.*

....

The Code of Professional Responsibility points the way to the aspiring and provides standards by which to judge the transgressor. Each lawyer must find within his own conscience the touchstone against which to test the extent to which his actions *should rise above minimum standards.*

(Emphasis added.)

DR 7–101 of the Code provides, in part: DR 7–101. Representing a Client Zealously

(a) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means, permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however ... by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

....

(B) In his representation of a client, a lawyer may:

(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

The Ethic Considerations also provide guidance in this context:

---

**3.** *See Harkness v. Jarvis,* 182 Mo. 231, 81 S.W. 446 (Mo.1904), *overruled on other grounds, State ex rel. Conant v. Trimble,* 311 Mo. 128, 277 S.W. 916 (1925); *First Missouri Bank of St. Francois County v. Patterson,* 696 S.W.2d 800 (Mo.App. 1985); *Murray v. Sanders,* 667 S.W.2d 426 (Mo. App.1984); *Kollmeyer v. Willis,* 408 S.W.2d 370 (Mo.App.1966); *Karst v. Chicago Fraternal Life Ass'n,* 22 S.W.2d 178 (Mo.App.1930); *Savings Finance Corp. v. Blair,* 280 S.W.2d 675 (Mo.App. 1955); *Hartle v. Hartle,* 184 S.W.2d 786 (Mo. App.1945); *Goodwin v. Kochititsky,* 3 S.W.2d 1051 (Mo.App.1928); *Marsh v. Riskas,* 73 Ariz. 7, 236 P.2d 746 (1951); *Bonfilio v. Ganger,* 60 Cal.App.2d 405, 140 P.2d 861 (1943); *Johnson v. McIntyre,* 80 Idaho 135, 326 P.2d 989 (1948); *Edgar v. Armored Carrier Corp.,* 256 Iowa 700, 128 N.W.2d 922 (1964); *Sewell v. Beatrice Foods Co.,* 145 Mont. 337, 400 P.2d 892 (1965); *Nelson*

*v. Lennon,* 222 Mont. 506, 206 P.2d 556 (1949); *Beliveau v. Goodrich,* 185 Neb. 98, 173 N.W.2d 877 (1970); *Urwin v. Dickerson,* 185 Neb. 86, 173 N.W.2d 874 (1970); *Rochester v. Holiday Magic, Inc.,* 253 S.C. 147, 169 S.E.2d 387 (1969); *Ingalls v. Arbeiter,* 72 S.D. 488, 36 N.W.2d 669 (1949); *Griggs v. Averbeck Realty, Inc.,* 92 Wash.2d 576, 599 P.2d 1289 (1979); *In re Marriage of Campbell,* 37 Wash.App. 840, 683 P.2d 604 (1984); 5A C.J.S. Appeal & Error § 1632 (1958); *see also,* 4 C.J. Appeal & Error § 2825(b) (1916).

**4.** Rule 4 was amended by the substitution of The Rules of Professional Conduct on August 7, 1985, effective January 1, 1986.

EC 7–38 A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so.

EC 7–9 [W]hen an action in the best interest of his client seems to him to be unjust, he may ask his client for permission to forego such action.

EC 7–10 The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

In one of the oldest and best known treatises on Legal Ethics, G. Sharswood, *Essay on Professional Ethics* (1896), Judge Sharswood discusses the fine line between advocating for your client and concealing something from your fellow lawyer:

> It is not only morally wrong but dangerous to mislead your opponent, or put him on a wrong scent in regard to the case. It would be going too far to say that it is ever advisable to expose the weakness of a client's case to an adversary, who may be unscrupulous in taking advantage of it, but it may be safely said that he who sits down deliberately to plot a surprise on his opponent, and which he knows can only succeed by being a surprise, deserves to fall, and in all probability will fall, into the trap which his own hands have laid.... There is one more caution to be given under this head. Let him shun most carefully the reputation of a sharp practitioner. Let him be liberal to the slips and oversights of his opponent whenever he can do so, and in plain cases not shelter himself behind the instruc-

tions of his client. The client has no right to require him to be illiberal—and he should throw up his brief sooner than do what revolts against his own sense of what is demanded by honor and propriety.

G. Sharswood, *Essay on Professional Ethics* 73–5 (1896).

The mark of a professional and the mark of a profession is that the members of the profession set for themselves a higher standard of conduct than is required of them by the law. The official position in the legal profession held by plaintiff's attorney requires of him an especially high standard of conduct.

In this proceeding, whether canons of ethics were violated or not is not an issue. Comments on this subject are relevant only to the extent that they might respond to plaintiff's attorney's statement that he was bound by the canons to carry out his client's direction that he not tell defendant or its attorney of the default until after the default became final.

I am in total agreement with Donnelly, J. In this case, equity should look to the conduct and interests of the parties, not the conduct of the attorneys. The action of the trial judge in vacating the default can and should be sustained upon the ground that equity will relieve the defendant-respondent from the default where the plaintiff, Sprung, directed his attorney to conceal from and not tell defendant or its attorney about the taking of the default until the passage of time made the default become final.

This is an extremely sensitive case. The text of the principal opinion affirmatively suggests to the trial court that it should further examine the conduct of the parties and rule on the matter "consistent with" the principal opinion, which neither overrules our much criticized existing case law [5]

---

5. *See, e.g.,* N. Laughrey, *Default Judgments in Missouri,* 50 Mo.L.R. 841 (1985), to which the majority cites, and its continuation in N. Laughrey, *Balancing Finality, Efficiency, and Truth:*

*A Proposed Reform of the Missouri Default Judgment Provision,* 51 Mo.L.R. 63 (1986). Laughrey finds Missouri's default judgment law to be confusing, fragmented, mechanical, rigid and

nor sets an alternative standard for doing equity.

Facing the reality of the disciplinary position in which plaintiff's attorney serves, passing the buck by asking a circuit judge to decide this issue for us again will forever brand us an intimidated court.

It is this Court which should affirm the trial court's order setting aside the default judgment and direct that the case be tried on its merits.

## APPENDIX A

I dissent.

A default judgment taken after a defendant has negligently failed to file responsive pleadings becomes a valid, enforceable judgment absent a timely appeal and absent unusual circumstances. I believe there was an unusual circumstance in this case—plaintiff's knowledge and concealment of defendant's negligence within sufficient time to have prevented the judgment from becoming final. Plaintiff had the "last clear chance" to prevent defendant from being in default. A plaintiff should not be unjustly enriched by defendant's negligent failure to plead where plaintiff has actual knowledge of such negligence and has the means to avoid the finality of a default judgment. I believe the consequences to this defendant of a final, default judgment, when compared to the consequences to this plaintiff of having to prove his case, demand a trial on the merits.

Further, I would dismiss plaintiff's petition for failure to state a claim upon which

relief may be granted. Rule 55.05 requires plaintiff to state "the facts showing [he] is entitled to relief[.]" Contrary to the majority opinion, the facts pled by plaintiff establish an attempt to plead a cause of action against defendant for negligently furnishing a dangerous instrumentality. Among the elements necessary to state a cause of action under this theory are: (1) Plaintiff did not know and by using ordinary care could not have known of the dangerous condition of the cart, (2) defendant, knew or by using ordinary care could have known of the dangerous condition, and (3) defendant failed to warn plaintiff of this condition. *See* MAI 25.06. Plaintiff eschewed any reliance on this theory for good reason; viewing his petition in its most favorable light, the facts alleged by plaintiff are not sufficient to state a cause of action for negligently furnishing a dangerous instrumentality as plaintiff has not alleged any of these elements of that action. Therefore, the facts essential to a recovery are not pleaded. *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 263[3] (Mo.App.1984).

Neither do I believe plaintiff has stated a cause of action upon his claimed general or common law negligence theory. The petition affirmatively alleges defendant leased the cart to plaintiff's employer. This fixes defendant's status as that of a "bailor for hire." *Jones v. Taylor,* 401 S.W.2d 183, 186[2] (Mo.App.1966). Under the common law of negligence, defendant's duty was not "to provide a reasonably safe cart." Rather, defendant's liability is limited to defects of which he had actual or constructive knowledge. *See e.g., Polovich v. Say-*

punitive. She proposes the consolidation of all the remedies into one rule to streamline the process. The new rule would allow greater leniency and flexibility prior to final judgment, including allowing the judgment to be set aside for excusable neglect. Excusable neglect would also be a ground to set aside the judgment after final judgment when the defendant had no notice of the default prior to the finality of the judgment. This consolidation and modification of the rules would bring Missouri from rigidity to the flexibility of leniency which other jurisdictions embrace. The law in this area is a

balancing of the goals of efficiency, finality and truth. Allowing notice and alleviation for excusable neglect promotes truth and fairness without sacrificing efficiency and the certainty of finality. Without these changes "[t]he ripple effects of the system cannot be precisely measured but it is logical to assume that default judgments may precipitate bankruptcies, wipe out a life time of savings, or be passed on to consumer through increased prices." N. Laughrey, *Balancing Finality, Efficiency, and Truth: A Proposed Reform of the Missouri Default Judgment Provisions,* 51 Mo.L.R. 63, 90 (1986).

*ers,* 412 S.W.2d 436, 439 (Mo.1967); *Price v. Seidler,* 408 S.W.2d 815, 820 (Mo.1966); *Gilpin v. Pitman,* 577 S.W.2d 72, 78 (Mo. App.1978); *Whitney v. Central Paper Stock Co.,* 446 S.W.2d 415, 418 (Mo.App. 1969). *Cf. Ridenhour v. Colson Caster Corp.,* 687 S.W.2d 938, 944 (Mo.App.1985). Plaintiff alleges defendant was "negligent and careless in renting a defective cart"; he does not allege defendant had any notice, actual or constructive, of the putative defect. He has, once again, failed to allege a fact essential to his recovery, *Green Quarries, supra;* therefore, his petition fails to state a cause of action and should be dismissed.

s/ Robert E. Crist,
Judge