

# In the
# Missouri Court of Appeals
## Western District

WILLIAM YEOKUM, )
)
Appellant, )
)
) **WD86500**
v. ) **OPINION FILED:**
) **AUGUST 20, 2024**
THE NATIONAL FOOTBALL )
MUSEUM, INC., )
)
Respondent. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jerri J. Zhang, Judge**

**Before Division One: Lisa White Hardwick, Presiding Judge, Alok Ahuja, Judge,**
**and Anthony Rex Gabbert, Judge**


William Yeokum appeals the circuit court's judgment granting National Football Museum, Inc.'s (NFM) "Motion to Vacate Default Judgment," contending the ruling was error under Rule 74.05(d)[1] because, 1) NFM did not have good cause for failing to respond to Yeokum's petition, 2) NFM failed to prove the motion to vacate was filed within a reasonable time, and 3) the court's delay in resolving the discovery motions until after it granted NFM's motion to vacate the default judgment prevented Yeokum from exploring NFM's claim of good cause. We reverse and remand.

---

[1]All rule references are to Missouri Court Rules (2019) unless otherwise noted.

## Background and Procedural Information

The facts, in the light most favorable to the circuit court's ruling, are as follows. On March 6, 2020, Yeokum filed a "Petition for Damages" wherein he named NFM, an Ohio corporation, a defendant along with Union Station in Jackson County, Missouri, and the Kansas City Chiefs Football Club ("Defendants" collectively). As relevant to this appeal, Yeokum alleged he sustained injuries during a visit to premises owned, maintained, and/or controlled by Defendants. Yeokum alleged that at all times relevant to the petition, NFM controlled all, or pursuant to contract with other defendants, a portion of the premises known as Union Station.

Yeokum's petition alleged that, between May 22, 2015, and September 6, 2015, Defendants hosted a public exhibition at Union Station which included interactive elements such as "Kick the Field Goal." Yeokum purchased a ticket and attended the exhibition on May 23, 2015, and participated in the "Kick the Field Goal" interactive element. The interactive element consisted of artificial turf, a kicking tee, a football, and a screen. The artificial turf was placed over polished hardwood floors and allegedly not secured to the hardwood flooring surface. Yeokum alleged that, upon kicking the football, the unsecured artificial turf slipped out from under him causing him to fall and sustain physical injuries. The petition included counts of negligence and premises liability, alleging that Defendants failed to properly install and/or maintain the "Kick the Field Goal" interactive element rendering it a dangerous condition and unsafe for use, thereby breaching their duty to maintain the premises in a reasonably safe condition.

In December 2017, Truman Medical Center issued a medical lien that was sent to NFM. The lien was evaluated by NFM's insurance carrier who contacted Truman Medical Center's attorney and informed the attorney that NFM had "no knowledge of this incident." The insurance carrier asked to be advised as to why Truman Medical Center believed NFM was involved in the claim outlined in the lien notice. The inquiry further asked if Union Station's "carrier" had provided any information or documents indicating that NFM was in any way involved. Nothing in the record shows that a response was ever given to the inquiry.

After Yeokum's petition was filed, a process server delivered a copy of the petition and related documents to M.M. at NFM headquarters in Ohio on March 11, 2020. M.M. was employed as D.B.'s executive assistant. D.B., the President and Chief Executive Officer of NFM, later attested in an affidavit filed with NFM's motion to set aside the default judgment entered against NFM, that D.B. was present in NFM's executive offices during business hours that day. D.B. was meeting with NFM's Chief Operating Officer and Chief Administrative Officer to discuss the COVID-19 pandemic and its impact on NFM. When present in the executive offices, D.M. is in charge of the offices and is the final decision-maker for any issue that arises concerning the operations of NFM. When D.B. is not present in the executive offices, the Chief Operating Officer or the Chief Administrative Officer are in charge of the offices.

D.B. further attested that, at no time on March 11, 2020, was M.M. in charge of the office or empowered to make decisions on behalf of NFM. M.M. was never an

3

officer, partner, registered agent, managing or general agent of NFM. Although NFM has a registered agent in the state of Ohio, which is the law firm that represents NFM, Yeokum made no attempt to serve his petition on NFM's registered agent.

D.B. attested that he first learned of Yeokum's claim after July 19, 2021, when an anonymous letter was received advising that a default judgment had been entered against NFM.[2] D.B. immediately authorized NFM's outside counsel to investigate, engage Missouri counsel, and file a motion for relief with the circuit court.

On August 25, 2020, Yeokum voluntarily dismissed the Kansas City Chiefs Football Club, Inc., without prejudice, from the litigation.

On November 13, 2020, Yeokum filed a Motion for Default Judgment against NFM, which the court granted on November 17, 2020. On February 18, 2021, Yeokum voluntarily dismissed Union Station, without prejudice, from the litigation. On February 24, 2021, the circuit court accepted Yeokum's medical records and life care plan, and entered a judgment against NFM in the amount of $6,807.06 for costs of past medical treatment, $2,466,870.00 for past, present, and future pain and suffering, and $1,644,580.00 for future medical care and treatment, totaling $4,118,257.06. Yeokum did not thereafter attempt to enforce the judgment or register the judgment in Ohio for collection.

---

[2]Affidavits from NFM Chief Administrative Officer, S.S., and NFM Chief Operating Officer/Chief of Staff/Executive Producer, G.V., were also included with NFM's motion to vacate. Both attested that they also did not learn of Yeokum's lawsuit until after July 19, 2021, and that D.B.'s executive assistant, M.M., was not in charge of NFM's office or empowered to make decisions on NFM's behalf.

On August 31, 2021, NFM filed a "Motion to Vacate Default Judgment" arguing the following three grounds for why the default judgment should be set aside: 1) The judgment was void under Rule 74.06(b)(4) because NFM was not subject to long-arm jurisdiction in Missouri for Yeokum's claim, 2) The judgment was void for lack of personal jurisdiction and should be vacated under Rule 74.06(b)(4), because NFM was not properly served, 3) Even if there was personal jurisdiction, the circumstances mitigated in favor of affording NFM relief from the default judgment under Rule 74.05(d), as NFM set forth a meritorious defense and good cause for failing to respond to Yeokum's pleadings.

Included with NFM's motion for relief was an affidavit by D.B. Aside from stating that he had no knowledge of Yeokum's lawsuit until after July 19, 2021, D.B. attested that, as part of the football exhibition at Union Station, NFM authorized Pro Football Exhibits, LLC ("PFE") to use certain intellectual property of NFM in a traveling exhibition that PFE organized in conjunction with local museums and civic event spaces. NFM, pursuant to a bailment agreement, gave PFE the right to display selected artifacts and exhibits from NFM with the traveling exhibition. The "Kick the Field Goal" interactive exhibit was not NFM's property and was not part of the artifacts and exhibits loaned to PFE. Further, NFM was not involved in any way with the "Kick the Field Goal" interactive exhibit and did not own, design, build, install, purchase, or maintain the "Kick the Field Goal" exhibit. NFM was not a sponsor, presenter, or partner of the "Kick the Field Goal" exhibit. Additionally, NFM did not contract with Union Station, the

5

Kansas City Chiefs Football Organization, Yeokum, or any other Missouri individual or entity relating to the exhibition at Union Station. To the best of D.B.'s knowledge, NFM had no business assets, activities, or agents in the State of Missouri.

NFM's motion to vacate included several other affidavits. An affidavit by S.C., Vice President of Museum/Exhibit Services for NFM, attested that NFM had an ongoing business relationship with PFE, and S.C. managed that relationship for the benefit of NFM. PFE entered into a Bailment Agreement in 2011 with NFM involving NFM loaning certain content and artifacts to PFE for use in its traveling exhibition, such as historical game-worn helmets and jerseys. PFE also entered into a License and Royalty Agreement with NFM involving NFM authorizing PFE to use certain intellectual property, including the trademark "Pro Football Hall of Fame," in conjunction with the traveling exhibition. S.C. attested that the relationship between PFE and NFM was not intended to be a money-making endeavor, but instead to help fulfill NFM's educational mission. From 2011 to 2021, the total amount of money received by NFM from PFE pursuant to the License and Royalty Agreement was less than $43,000.

In 2015, S.C. traveled to Kansas City to oversee the setup of NFM artifacts for exhibition at Union Station. S.C. worked with curators from Union Station to document the artifacts displayed. S.C.'s assistant later returned to Kansas City to oversee repacking the artifacts at the close of the exhibition. A copy of NFM's Bailment Agreement and License and Royalty Agreement with PFE were attached to S.C.'s affidavit.

6

An affidavit of a managing member of PFE since PFE's inception, M.D., was also included with NFM's motion to vacate the default judgment. M.D. attested that, in 2014, PFE executed an Exhibit Agreement with Union Station, and M.D. signed that agreement as the authorized signatory for PFE. The Exhibit Agreement sets forth the terms of the agreement between Union Station and PFE to present the "Gridiron Glory" exhibition at Union Station in 2015. The Agreement states that, among other things, PFE would provide a "kicking simulator" for visitors to the Gridiron Glory exhibition at Union Station. PFE did, in fact, provide the field goal kicking simulator that was used by visitors to the Gridiron Glory exhibition at Union Station in 2015.

M.D. attested that, NFM was not involved with the field goal kicking simulator used at the Gridiron Glory exhibition at Union Station, and did not design, build, install, purchase, or maintain the field goal kicking simulator used at the Gridiron Glory exhibition at Union Station. The field goal kicking simulator was not one of the curated artifacts bailed by NFM to PFE. Further, NFM had never been a member, investor, or owner of PFE, and had never had any overlapping officers, directors, or employees with PFE.[3]

On September 27, 2021, Yeokum filed suggestions in opposition to NFM's motion to vacate, arguing that NFM had notice in 2017 of Yeokum's injuries due to the Notice of

_____

[3]NFM's motion also contained an exhibit showing that three months prior to Yeokum filing his motion for default against NFM, counsel for the Kansas City Chiefs advised Yeokum's counsel that the entity responsible for the Gridiron Glory exhibition was PFE, and provided a copy of PFE's contract with Union Station.

Hospital Lien which was sent to NFM by Truman Medical Center. Further, that NFM never explained what happened to the filings that were served on D.B.'s executive assistant, M.M.

Nearly five months later, on February 21, 2022, Yeokum filed "Plaintiff's Motion to Stay Hearing Pending Discovery," requesting that any hearing on NFM's motion to vacate the default judgment be stayed until at least May 8, 2022, as Yeokum had a deposition scheduled with M.M. on March 9, 2022.

On February 28, 2022, NFM moved for a protective order, asking that discovery not be had until the court determined that it had personal jurisdiction over NFM, arguing that Rule 56.01(c) gives the court discretion to delay discovery until determining personal jurisdiction. NFM contended that the motion to vacate was fully briefed, there had been no timely request for discovery, and the materials before the court demonstrated there was neither long-arm jurisdiction nor valid service of process. NFM argued that, without personal jurisdiction, the court had no authority to proceed with any other issues in the case.

Included with NFM's motion was an exhibit showing an email chain from the parties' attorneys to the court requesting that NFM's motion to vacate be set for hearing. The first email was sent by NFM's counsel (and carbon copied to Yeokum's counsel) on November 12, 2021. The assigned judge was on maternity leave, and the parties corresponded with the judge's law clerk; the clerk ultimately stated that the matter would be placed on the court calendar for oral argument when the judge returned.

8

The circuit court ultimately set a January 23, 2023, hearing date for all pending motions. At the start of that hearing, the court stated that it would take up the oldest motion first, which was NFM's motion to vacate. Prior to the court ruling on the motion, Yeokum's counsel made the following argument about the need for discovery:

> Here's the dilemma the plaintiff faces [if the court rules on the motion to vacate the default, without first permitting discovery]: the question of whether [M.M.] had the authority, under the facts in this case, whether she was told to go out there by her boss, [D.B.], or somebody else who was an officer of their company and accept process, is a fact issue because they provide no explanation as to why [M.M.] was the one receiving the summons.
>
> They do not provide anything in [D.B.'s] affidavit, or anybody else's, as to what she did with the suit papers after she got them. They don't tell us when they first learned of the fact that [M.M.] got the suit papers on March 11. Those are things that we would like to – depose her about and find out, for example, whether she was regularly employed to accept service of process in her position as the executive assistant there because, if she was, the rule specifically allows people who have been appointed to receive process to – to constitute a legitimate source and depository of the process.

After argument by both sides, the court ruled:

> So here's my thinking for this afternoon is: If your arguments under your motion here, point one and point two, are your reasons for point three, after hearing the arguments today, I do think pursuant to Rule 74.05(d) … that NFM has provided the Court a meritorious defense to this suit and good cause for failing to respond to the petition based on the arguments raised in point one and two.
>
> I believe – my understanding of the recent – of the newest version of our case law is that we don't need to go into the merits of those arguments; so for those reasons I am going to go ahead and grant the motion to vacate default judgment based on defendant's point three.

9

And I don't know that we need to go into specific rulings into point one and two at this time because I am – I read your point one and two as your reasons for your point three, unless you feel differently.

NFM responded that it believed the "jurisdictional issues are probably separate" but "become moot if we're relieved from the default, and I can accept that." Yeokum argued that he also had not had an opportunity to conduct discovery on NFM's meritorious defense claim, to which the court quoted the portion of *Hollifield v. Las Cumbres, LLC*, 655 S.W.3d 238, 242 (Mo. App. 2022), which discusses that "meritorious defense' has been interpreted liberally to mean any factor likely to materially affect the substantive result of the case. Further, that there need only be a showing "of at least an arguable theory of defense," and whether any evidence presented is credible is to be determined after the default judgment is set aside at a subsequent trial on the merits. *Id.*

On January 24, 2023, the circuit court issued its "Order Granting National Football Museum Inc.'s Motion to Vacate Default Judgment." The court denied Yeokum's motion to stay and NFM's motion for protective order as moot. On May 5, 2023, the circuit court entered a written judgment granting NFM's motion to vacate the default judgment. On June 5, 2023, Yeokum moved to amend or vacate that judgment, which was denied August 9, 2023.

This appeal follows.

**Standard of Review**

We review the circuit court's grant of a Rule 74.05(d) motion to set aside a default judgment for abuse of discretion. *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 688 (Mo.

10

banc 2007). "Broad discretion is afforded to trial court decisions granting motions to set aside a default judgment while the trial court has narrowed discretion in decisions denying a motion." *Id.* at 687. Such deference is given whether the motion to set aside the default is supported through exhibits and affidavits or through live testimony. *Id.* Likewise, trial courts have broad discretion in administering rules of discovery, which we will not disturb absent an abuse of discretion. *Rasmussen v. Illinois Casualty Company*, 628 S.W.3d 166, 172 (Mo. App. 2021).

## Point III – Discovery Motions

We address Yeokum's third point, as we find it dispositive. In his third point on appeal, Yeokum contends the circuit court erred in delaying resolution of the discovery motions until after it granted NFM's motion to vacate pursuant to Rule 74.05(d), arguing that a motion to set aside a default judgment is an independent action in which the party resisting the motion is entitled to conduct discovery under settled principles of Missouri law. Yeokum contends that, by not ruling on the discovery motions, the court prevented Yeokum from conducting discovery that would have allowed him to explore NFM's claim that it had good cause to set aside the default judgment. We agree.

"Rule 74.05(d) provides that a default judgment can be set aside '[u]pon motion stating facts constituting a meritorious defense and for good cause shown….'" *Brungard*, 240 S.W.3d at 686. "The party moving to set aside the default judgment has the burden to prove good cause for setting aside the judgment." *Id.* at 688. Rule 74.05(d) defines "good cause" as including "a mistake or conduct that is not intentionally or recklessly

11

designed to impede the judicial process." *Id.* "When reviewing a trial court's determination of good cause shown under Rule 74.05(d), we view the evidence in the light most favorable to the ruling and consider only whether there was a sufficient factual basis for the trial court's determination under the totality of the circumstances." *Liora Tech, Inc. v. United Medical Network, Inc.*, 662 S.W.3d 334, 337 (Mo. App. 2023).

"Plaintiff's Motion to Stay Hearing Pending Discovery" was filed February 21, 2022. Therein, Yeokum argued that he needed to depose M.M. to determine whether she was "authorized to accept service on March 11, 2020" because NFM claimed that service was improper. Yeokum alleged that he spoke with NFM's counsel and confirmed counsel was available March 9, 2022, for M.M.'s deposition. Further, that interrogatories and requests for production of documents were propounded on NFM on January 28, 2022. Yeokum argued that, because NFM's counsel had not raised an objection to M.M.'s deposition, and Yeokum had prepaid non-refundable airfare to and from Ohio on March 8-9 and for lodging in Ohio, "Plaintiff requests the hearing and ruling on this matter be stayed until at least May 8, 2022, which is sixty-one (61) days following [M.M.'s] deposition."

On February 28, 2022, NFM filed a "Motion for Protective Order," requesting the court "grant a protective order that discovery not proceed until it has made at least a preliminary determination that the Petition states a basis for long-arm jurisdiction over NFM and the Affidavit of Service states facts showing that valid service was obtained upon NFM."

12

On December 5, 2022, the court entered an "Order for Hearing," noting that on January 23, 2023, the court would "take up the pending motions in this matter." Yeokum's motion to stay was one pending motion, as were NFM's motion to vacate the default judgment and motion for a protective order.

The circuit court ruled at that hearing that, under Rule 74.05(d), the evidence and arguments NFM set forth regarding its contentions that NFM was not subject to long-arm jurisdiction in Missouri for Yeokum's claims, and that the judgment was void for lack of personal jurisdiction because NFM was not properly served (and was also unaware of Yeokum's petition until after the default judgment was entered), presented both a meritorious defense and good cause for failing to defend against Yeokum's petition prior to entry of the default judgment. The court did not rule on NFM's claims regarding long-arm jurisdiction and proper service (and seemed to suggest that discovery would be necessary to ultimately rule on those issues).

We find that, because Yeokum was prevented from conducting discovery on a key factual issue regarding NFM's good cause claim, the totality of the circumstances was not before the court so as to properly rule on the issue of good cause. NFM does not dispute that a special process server came to NFM's corporate headquarters in Canton, Ohio on March 11, 2020, and asked for someone who could accept service papers on behalf of NFM. NFM also does not dispute that, in response to the special process server's request, M.M., the Executive Assistant to NFM's Chief Executive Officer, appeared and accepted the summons, petition, and related documents from the process server. M.M. no

13

longer works for NFM, and NFM did not provide any affidavit from her concerning why she appeared to receive the suit papers, or what she did with them after receiving them.

NFM's executives claim M.M. had no authority to accept service of process on NFM's behalf, and that they had no notice of the suit until July 2021, sixteen months later (although NFM presented no evidence as to why M.M. accepted the documents, and what she did with them). Yeokum sought to conduct M.M.'s deposition by filing a collateral action in Ohio to have a deposition subpoena issued to her, but after M.M. was served, an Ohio court stayed the subpoena pending a decision from the Missouri court. NFM's motion to set aside was ultimately granted without permitting M.M.'s deposition and other discovery to first occur.

Yeokum was entitled to conduct discovery before the set-aside motion was decided. Although the current Rules of Civil Procedure do not require a defendant to file an independent equitable petition in order to seek to set aside a default judgment, Rule 74.05(d) provides that, "A motion filed under this Rule 74.05(d), even if filed within 30 days after judgment, *is an independent action* and not an authorized after-trial motion subject to Rules 78.04, 78.06, or 81.05." (Emphasis added). At a time when a motion to set aside a default judgment was litigated by a separate petition for equitable relief, the Missouri Supreme Court held that discovery was appropriate, explaining:

> If, however, defendant's motion is to be accorded the status of a petition, the proceedings that follow must be consistent with that status. Defendant is required not only to plead its cause, but also to prove it. And plaintiff is entitled to defend his judgment vigorously and to labor to defeat defendant's equitable claims. ***Thus, plaintiff is entitled to the full panoply***

14

> *of procedures established by our Rules, including the opportunity…to conduct discovery and to present evidence on contested issues at a hearing.*

*Sprung v. Negwer Matls., Inc.*, 727 S.W.2d 883, 889 (Mo. banc 1987) (emphasis added).

We have previously ruled that, because the Rule 74.05(d) motion commences an independent action, various procedures applicable to civil actions must be followed. *See, e.g., Robertson v. Rosner*, 641 S.W.3d 436, 439-40 (Mo. App. 2022) ("Because it terminates an 'independent action,' 'the judgment granting or denying a motion to set aside a default judgment[ ] must meet the requirements of a judgment under Rule 74.01(a) before it may be appealed' – including the requirement that the judgment be in writing, and 'denominated a "judgment" or "degree"'" (citations and footnote omitted)); *Clark v. Brown*, 794 S.W.2d 254, 256 (Mo. App. 1990) (motion to set aside default not subject to "deemed denied after 90 days" rule in 81.05); *State ex rel. King v. Huesemann*, 776 S.W.2d 488, 491 (Mo. App. 1989) (parties entitled to peremptory change of judge under Rule 51.05(a)). The opportunity to conduct discovery is, likewise, a procedure available to a litigant under a Rule 74.05(d) motion.

The circuit court abused its discretion in delaying resolution of the discovery motions until after it granted NFM's motion to vacate pursuant to Rule 74.05(d). Yeokum's third point on appeal is granted.

15

## Conclusion

The circuit court's judgment is reversed and remanded.

_____
Anthony Rex Gabbert, Judge

All concur.

16